Silas GREEN, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 53683.

Court of Criminal Appeals of Texas.

Sept. 21, 1977.

Murray L. Lieberman, Houston, for appellant.

Carol S. Vance, Dist. Atty., Alvin M. Titus and A. Ross Rommell, Jr., Asst. Dist. Attys., Houston, Jim Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

BROWN, Commissioner.

Appellant's motion for rehearing is granted. Our prior opinion is withdrawn.

This is an appeal from a conviction for fraudulent misuse of a credit card under Article 1555c, Section 10(b), Vernon's Ann. P.C. (1925). Appellant was tried before a jury and punishment was assessed by the trial court at five years in the Texas Department of Corrections. Imposition of sentence was suspended and appellant was placed on probation for a period of five years.

In appellant's second ground of error he contends that the evidence is insufficient to support the jury's verdict. The record reflects that James McGuire was the holder of Texaco Credit Card number 56–214–1799–6 and appellant was the operator of a Texaco service station located at 6929 North Loop East in Houston. McGuire testified that the card was stolen from him on the night of June 25, 1971 and that he notified Texaco on June 28, 1971 that the card had been stolen. He further stated that he had never seen appellant nor had he ever purchased gasoline or automotive goods from appellant's Texaco station. The State introduced into evidence a credit card purchase receipt representing the purchase of four tires from appellant's service station for two hundred twenty-eight dollars and ninety-six cents ($228.96). McGuire testified that he had never seen the receipt and

that the signature on the receipt was not his. The receipt indicates that the purchase was made with McGuire's credit card number 56–214–1799–6.

Jill Moreland testified that she was employed by Texaco in the charge authorization center. She stated that it was her duty to authorize credit card purchases of more than twenty-five dollars. She said she received a call on June 28, 1971 from appellant's service station and took the credit card number and the retailer's account number. She stated that when she received the retailer's number she noted that she had previously received instructions to put the caller on hold for further verification of that retailer's account number, although no reason was given for this procedure. She then notified R. J. Poehl in the "fraud group" of the Texaco credit center that she had received a call from the suspect retailer. She then gave appellant authorization for the sale.

G. C. Mason, Manager of security for Texaco credit card sales, testified that he went to appellant's station on June 28, 1971 with Poehl to investigate a purchase on McGuire's credit card. Mason said appellant told them he sold a set of new tires and received in trade an old set which he pointed to in the rear of a pick-up truck. Mason said the tires were very old, had worn differently and were full of water. He further said that there were no tire displays or new tires for sale in appellant's station. Mason said appellant told them the tires were purchased by a white male of average height and approximately thirty to thirty-five years old. Appellant also told them the purchaser drove a 1955 Buick with Texas license plate number PXK 162 and presented a Texas driver's license with number 0492351. Mason finally stated that the credit sales receipt indicated that appellant was authorized to make the sale to the purchaser.

The State then called Edubijes Molina who testified that he had been issued Texas driver's license number 0492351 and that he had never lost it and that it was in his possession on June 28, 1971 and that he had

never been in appellant's station, did not know appellant and did not purchase a set of tires from him. He further stated that he did not own and had never owned a 1955 Buick. The State then called a deputy tax assessor-collector for Harris County who testified that the Texas automobile license plates with number PXK 162 were registered to a 1965 Dodge owned by John J. Dozler. Mrs. Dozler testified that the license plates were on the 1965 Dodge in June of 1971 and had not been removed or stolen. She further stated that she had never seen appellant before and did not purchase tires from him. Finally, the State presented testimony from a Texaco accounting representative who stated that the receipt in question had been presented to Texaco for payment and had been processed. Appellant presented no evidence.

Article 1555c, Section 10, Vernon's Ann. P.C., dealing with credit card theft and fraud by a person authorized to provide goods or services, provides as follows:

"(a) A person who is authorized by an issuer to furnish money, goods, services, or anything else of value upon presentation of a credit card by the cardholder, or any agent or employees of such person, who with intent to defraud the issuer or the cardholder, furnishes money, goods, services, or anything else of value upon presentation of a credit card obtained or retained in violation of any provision of Sections 2–8 of this Act or a credit card which he knows is forged, expired, or revoked is guilty of an offense and is subject to the penalties set forth in Section 13(b) of this Act.

"(b) A person who is authorized by an issuer to furnish money, goods, services, or anything else of value upon presentation of a credit card by the cardholder, or any agent or employee of such person, who, with intent to defraud the issuer or the cardholder, fails to furnish money, goods, services or anything else of value which he represents in writing to the issuer that he has furnished, is guilty of an offense and is subject to the penalties set forth in Section 13(a) of this Act."

(These provisions of the former Penal Code are now covered by V.T.C.A. Penal Code, Section 32.31.) An "issuer" is defined in Article 1555c, Section 1(4), as "any person, firm, corporation or financial institution which issues a credit card, or its duly authorized agent."

The indictment, omitting the formal parts, alleges that Texaco had issued credit card number 56–214–1799–6 to James F. McGuire and that appellant

" . . . was a Texaco Service Station retailer and in such official capacity was authorized by Texaco to furnish and sell goods on credit upon presentation to him of a Texaco Credit Card by the cardholder, and the said SILAS GREEN, JR., with intent to defraud Texaco, the issuer, . . ., did then and there represent in writing to Texaco by filling out and completing [a] Texaco credit card invoice . . . that he the said SILAS GREEN, JR., furnished and sold four 885 × 15 tires to the said James F. McGuire, whereas in truth the said SILAS GREEN, JR. did not furnish and sell tires to James F. McGuire, and the said James F. McGuire did not purchase said tires from the said SILAS GREEN, JR."

It is clear that the indictment charges appellant with an offense under Article 1555c, Section 10(b). It was therefore incumbent upon the State to show (1) that appellant was a person authorized by an issuer to furnish goods and services on presentation of a credit card by a cardholder; (2) that, with intent to defraud Texaco, (3) appellant failed to furnish goods which (4) he represented in writing to Texaco that he had furnished.

The State presented evidence that appellant was an authorized Texaco retailer which satisfies the first element of proof. The State also showed that appellant represented in writing to Texaco that he had furnished new tires of the value of more than two hundred dollars to a purchaser purported to be McGuire, satisfying the fourth element of proof. There was also testimony that appellant gave Texaco's investigators a description of the purchaser's

automobile, his license plate and driver's license number, all of which turned out to be false. Further testimony showed that appellant had no new tires for sale in his station. Finally, the authorized holder of the credit card used in the alleged purchase, the holder of the driver's license used for identification and the holder of the license plates alleged to have been on the purchaser's car all testified that they did not know appellant, had never been in his Texaco station, and did not purchase tires from him. This evidence satisfies the second and third elements of proof.

We find the evidence sufficient to support the jury's verdict.

Appellant's second ground of error is overruled.

We now turn to appellant's first ground of error in which he contends that the trial court erred in overruling appellant's motion to quash the indictment because appellant was denied his right to a speedy trial.

The indictment in this offense was filed on November 16, 1971. Appellant was not arrested until October 7, 1974. The trial took place on September 30, 1975.

At the hearing on appellant's motion to quash the indictment appellant testified that he resided at 3906 Madden in Houston and had resided there for eleven years and was residing there at the time of this offense and was never absent from Harris County for any long period of time. He stated he was the operator of the Texaco service station on North Loop East in Houston and that he employed six other persons in the station, but had no independent recollection of their names or addresses. He stated that all of the records of the service station were kept by Lone Star Bookkeeping Service, but the records for the period in question were "not available." He said that after he was arrested for this offense he tried to locate some of the former employees but could find none of them. Appellant stated that some of these employees were present at the time of the alleged offense and could testify that a customer came in, purchased tires, presented a credit card for the purchase and then drove away after completing the purchase. Appellant further stated that during the years 1973 and 1974 he was involved in civil litigation concerning his lease and that Texaco served him with the necessary papers in that lawsuit. He also stated that he had no knowledge that any criminal charges had been filed against him until he was arrested in 1974.

Detective Robert McKinney of the Harris County Sheriff's Office of Criminal Warrants testified that he executed a warrant for appellant's arrest in October of 1974. He stated that notations on the warrant indicated that two previous attempts had been made to serve the warrant. He further stated that he and his "partner" were handling approximately ten to fifteen thousand "no arrest" cases at the time of this hearing.

It was stipulated that appellant and Texaco were involved in civil litigation from October 27, 1972, when appellant was served at 3906 Madden, until January 30, 1975, when judgment was rendered. Based on this evidence the trial court overruled appellant's motion to quash the indictment.

In *Smith v. State*, 530 S.W.2d 827 (Tex.Cr.App.1976) we quoted our previous opinion in *Davison v. State*, 510 S.W.2d 316 (Tex.Cr.App.1974) where this Court wrote:

"The test for ascertaining whether the right to speedy trial has been denied is a balancing test based upon at least four criteria: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of his right; and (4) the prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Pete v. State*, 501 S.W.2d 683 (Tex.Cr.App.1974); *McKinney v. State*, 491 S.W.2d 404 (Tex.Cr.App.1973)."

In *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), the Supreme Court of the United States emphasized that none of these four criteria have "talismanic qualities," and in particular that a showing of prejudice is not a sine qua non to demonstrating a denial of the right to speedy trial.

**742**

When considering the length of delay, the time period is measured from the time the defendant became the "accused." *George v. State*, 498 S.W.2d 202 (Tex.Cr.App.1973). In the instant case the indictment was returned in November 1971; however, appellant was not aware of the indictment until his arrest in October, 1974. Therefore, although appellant was technically the "accused" as of November 1971, he was not incarcerated and was not cognizant of the fact that he was the accused in a criminal proceeding. The record does not reflect the reason for the delay between indictment and arrest, although there is testimony that at least two attempts were made to arrest appellant during the period. Nor is there any assertion of a deliberate effort by the State to delay the trial. Appellant, of course, made no assertion of his right to a speedy trial during this period. In fact, we note that appellant made no assertion of his Sixth Amendment right until the filing of his motion to quash the indictment on September 29, 1975, the day preceding this trial.

With respect to a showing of prejudice, it is generally said that there are three interests to be considered in determining prejudice to the defendant. These three interests are: (1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker v. Wingo, supra; McKinney v. State, supra.* As stated above, appellant was not incarcerated during the period of time following his indictment and it appears from the record that appellant posted a $2000 bond on the day of his arrest and was released; therefore, the first consideration has no application in the instant case. The second consideration is of little or no effect since appellant was not even aware of the 'pending charges until his arrest. Our main concern, therefore, becomes a determination as to whether or not appellant's defense was impaired by the delay.

In an effort to show prejudice appellant testified that some of his six service station employees were present in the station on the day of the offense. He stated that

these employees could testify that the sale of the tires actually took place. He stated that he could not remember the names of any of the employees and that all of his business records were kept by Lone Star Bookkeeping and were "unavailable." The record does not reflect that appellant attempted to subpoena the records or any of the witnesses. We also note that appellant and the State stipulated that appellant was involved in civil litigation concerning his lease. It was not shown how appellant was able to prepare a defense to the civil suit.

In *Harris v. State*, 489 S.W.2d 303 (Tex. Cr.App.1973) the accused contended that two of his witnesses were unavailable due to the delay in bringing the case to trial. We held that where there was no showing that the witnesses were material or relevant to the case and where no subpoenas were issued for the witnesses and the accused made no diligent effort to secure their attendance, there was no prejudice to the appellant.

In the instant case appellant's efforts to obtain the presence of his former employees were limited to trying to find them through the bookkeeping service. Even assuming that the witnesses were material and relevant to this case, we find that appellant has not made a showing of due diligence to secure their presence. Further, there was no showing that the bookkeeping company had records on the employees at the time appellant was indicted.

Therefore, considering all of the factors involved and applying the balancing test of *Barker v. Wingo, supra,* we conclude that appellant was not denied his right to a speedy trial.

Appellant's first ground of error is overruled.

In his third ground of error appellant contends that the trial court erred in sentencing appellant to five years in the Texas Department of Corrections because the maximum punishment for the offense for which appellant was convicted was two years. We agree with appellant's contention and have determined that this cause

must be remanded to the trial court for a new hearing on punishment.

Appellant was indicted for "failure to provide goods, etc." under Section 10(b) of Article 1555c, supra, as discussed above. That section provides that a person found guilty of the offense shall be punished under the penalties provided in Section 13(a) which sets maximum punishment at a fine of not more than $1000 or not more than two years in the penitentiary or both. The trial court assessed punishment at five years and then suspended sentence and placed appellant on probation. This punishment clearly was not authorized under the law.

The judgment of conviction is affirmed and the cause is remanded to the trial court for a new hearing on punishment.

Opinion approved by the Court.