**Gerald Wayne PRINCE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05-81-00542-CR.**

Court of Appeals of Texas,
Dallas.

June 23, 1982.

Rehearing Denied Aug. 2, 1982.

Discretionary Review Granted
Nov. 24, 1982.

George Milner, Dallas, for appellant.

Henry Wade, Dist. Atty., W.T. Westmoreland, Jr., Asst. Dist. Atty., for appellee.

Before GUITTARD, C.J., and FISH and ALLEN, JJ.

ALLEN, Justice.

This appeal is from a conviction for attempted murder, enhanced by two prior felony convictions in which punishment was assessed at life imprisonment. On appeal appellant complains that (1) the trial court erred in failing to give an instruction to the jury on circumstantial evidence; (2) the evidence is insufficient to support a conviction; (3) the trial court erred in denying appellant's motion to dismiss the indictment because of violations of his speedy trial rights; (4) the trial court erred in failing to require the State to disclose the names, addresses and telephone numbers of eyewitnesses to the incident alleged in the indictment; and (5) the trial court erred in failing to require the State to disclose the names, addresses and telephone numbers of persons on the witness list which the prosecution did not plan to call, and in allowing the prosecution to prohibit defense counsel from interviewing witnesses to be called on rebuttal. We disagree and, therefore, affirm the conviction.

The evidence shows that during the evening hours of July 21, 1979, the complaining witness, Terry Starling Leverette, went with friends to the Trap II Club on North Buckner Boulevard in Dallas where he played pool and drank beer until nearly closing time the following morning. He left the club alone and, as he walked toward the car, he was shot in the back of the neck. As a result of the shot the complainant became a quadriplegic. He does not know of his own knowledge who shot him.

Sandra Craft was on duty as a bartender at the Trap II Club at the time of the shooting. She identified appellant as being at the bar talking to her just before 2:00 a.m. when the complainant approached the bar and noisily asked for matches. Words were exchanged between appellant and the complainant, after which the complainant picked up the matches and went outside. She further testified that appellant remarked to her that complainant was a smart ass and said, "I'll teach him a lesson."

She then observed appellant transfer a handgun from his boot to his belt and exit behind the complainant. She described appellant as wearing blue jeans, boots, a shirt and yellowish straw cowboy hat with his sunglasses resting on the top of his hat. She identified appellant in open court. Craft sent a waitress, Bonnie Turner, after appellant to take him home. Shortly thereafter she heard shots. She then went outside and saw the complainant on the ground bleeding from the back of the neck.

Thomas Allen, owner of the Trap II Club, testified that he had a conversation with a person wearing western attire including boots and a straw cowboy hat with sunglasses on top of the hat shortly before 2:00 a.m. on July 22, 1979. Allen initially identified the person as the appellant, but later changed his testimony to, "I cannot identify him positively." Allen saw the person sit on a stool at the bar, take a handgun from his boot, place it in his belt, and walk rapidly to the outside of the club. Allen followed and saw appellant pistol whip the complainant across the face and level the gun at complainant's head and pull the trigger. He testified that appellant then fled. Allen was positive that the man who did the shooting was the same person wearing western attire he had talked to minutes before, inside the club. Jane Davis witnessed the shooting and heard Bonnie Turner say "Wayne, please don't do it." Patricia Hamilton witnessed the shooting and heard the waitress say, "Wayne, please don't do it." Terry Sudderth witnessed the shooting. Witnesses Davis, Hamilton and Sudderth did not identify appellant.

■ Our threshhold question is whether the trial court's charge to the jury should have included a charge on circumstantial evidence. Such a charge is required only when the evidence of the main fact essential to guilt is purely and entirely circumstantial. *Ransonette v. State,* 550 S.W.2d 36, 43 (Tex.Cr.App.1976). However, when the facts are in such close relationship to the main fact to be proved as to be the equivalent of direct testimony, a charge on circumstantial evidence is not required.

*Romo v. State,* 593 S.W.2d 690, 695 (Tex.Cr. App.1980); *Ales v. State,* 587 S.W.2d 686, 688 (Tex.Cr.App.1979); *Newton v. State,* 509 S.W.2d 610, 614 (Tex.Cr.App.1974).

■ In the instant case, the main fact to be proved was that the appellant committed the offense of attempted murder as alleged by the indictment. Witness Sandra Craft made a positive identification of appellant as being the person wearing the western attire, with sunglasses on the top of his straw cowboy hat, who transferred a handgun from his boot to his belt, who declared he was going to teach complainant a lesson, and who went out the front door of the club within a minute after complainant exited by the same front door. Moments later she heard shots fired. She knew appellant prior to the date of the shooting. Witness Allen saw the person in western attire with sunglasses on top of his straw cowboy hat remove a handgun from his boot while seated on a barstool in the club and then rush from the club. This witness followed him out the door and observed that he pistol whipped and shot the complainant. He was positive that the person he followed from the club was the same person who shot complainant.

We conclude that the facts proven by the evidence are either direct evidence of the main facts to be proved or that they are in such close relationship as to be the equivalent of direct evidence of the main facts to be proved. In neither instance is a charge on circumstantial evidence required. *Ales v. State, supra* at 688; *Newton v. State, supra* at 614. No error is shown in the trial court's refusal to submit appellant's requested charge on circumstantial evidence.

■ Appellant next complains that the evidence is insufficient to support the conviction. In response to appellant's challenge to the sufficiency of the evidence we must view the entire record in a light most favorable to the jury's verdict. *Trostle v. State,* 588 S.W.2d 925, 929 (Tex.Cr.App. 1979). We must ascertain whether or not the evidence is sufficient to warrant any rational trier of the facts to find that the essential elements of the crime have been

proved beyond a reasonable doubt after resolving all conflicts in testimony, weighing the evidence and drawing reasonable inferences from basic facts to ultimate facts. *Griffin v. State,* 614 S.W.2d 155, 159 (Tex. Cr.App.1981). Testing this case by the facts proven, we find the evidence sufficient to sustain the jury's finding. Appellant's second ground of error is overruled.

In his third ground of error, appellant contends that the trial court erred in denying his motion to dismiss the indictment because of various violations of his speedy trial rights. Appellant predicates this claim on three separate grounds: (1) that he was denied a speedy trial as guaranteed by Tex. Code Crim.Pro.Ann. art. 32A.02 (Vernon Supp. 1982); (2) that he was denied a speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution and article I, § 10 of the Texas Constitution; and (3) that the trial court failed to dismiss the indictment under the Interstate Agreement on Detainers Act, Tex.Code Crim.Pro.Ann. art. 51.14, Article IV (Vernon 1979).

■ The record reflects that the State commenced a criminal action against appellant on August 12, 1979 by filing a complaint. On November 12, 1979, appellant was indicted for the instant offense and an announcement of ready was filed by the prosecution on November 20, 1979. The prosecutor testified at the hearing on appellant's motion to dismiss that the State had been ready for trial since the return of the indictment and that its witnesses had been available during the entire period. No evidence was offered to rebut this statement of readiness and it remained unchallenged. Under the authority of *Barfield v. State,* 586 S.W.2d 538, 542 (Tex.Cr.App.1979), we hold that the requirements of the Speedy Trial Act were fulfilled.

■ Similarly, we reject appellant's constitutional arguments that he was not afforded a speedy trial. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 2183, 33 L.Ed.2d 101 (1972), the United States Supreme Court first adopted a "balancing test" to determine whether an accused had been denied the right to a speedy trial under the United States Constitution. The guidelines to be applied in each case require consideration of (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of his speedy trial rights; and (4) any prejudice to the accused. *See also Phipps v. State,* 630 S.W.2d 942 (Tex.Cr. App.1982); *Green v. State,* 555 S.W.2d 738, 741 (Tex.Cr.App.1977) (on Appellant's Motion for Rehearing).

■ Applying the "balancing test" to the instant case, we find there was a delay of almost one year and nine months from the time a complaint was filed against appellant until the time of trial. Such delay is not, per se, a deprivation of appellant's constitutional right to a speedy trial. It does, however, necessitate further consideration of appellant's claim. *See Barker v. Wingo, supra; Courtney v. State,* 472 S.W.2d 151, 153–154 (Tex.Cr.App.1971).

The facts in the case at bar fail to show any deliberate attempt on the part of the State to delay the trial in order to hamper the defense. The appellant was incarcerated during this period by federal authorities. The record also fails to indicate any attempt by appellant to secure a speedy trial. Although several pretrial motions were filed on his behalf, these pleading did not seek a speedy trial but sought only a dismissal of the indictment. Appellant's failure to assert the right to a speedy trial is one of the factors to be considered in the overall inquiry into the deprivation of this right. *Phipps v. State, supra; Barker v. Wingo, supra.* Since no request for a speedy trial was ever made by appellant, our only consideration is whether or not appellant's ability to defend himself was prejudiced by the delay.

■ The three interests to be considered in determining prejudice to the defendant by failure to grant a speedy trial are (1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the delay will impair the ability of the accused to defend himself.

*Green v. State, supra* at 742; *Barker v. Wingo, supra.* The record reflects that the State provided appellant with the names of eyewitnesses to the offense. Although no subpoenas for fact witnesses appear in the record, counsel for appellant interviewed several witnesses prior to trial. Appellant made no motion for continuance in order to locate additional witnesses and there was no showing that witnesses were unavailable at the time of trial. Additionally, there was no showing that the testimony of witnesses not located may have been relevant and material to the defense. For these reasons we conclude that appellant has failed to make a showing of prejudice resulting from a delay in his trial. Applying the balancing test of *Barker v. Wingo, supra,* we hold that appellant was not denied his constitutional right to a speedy trial.

We next consider appellant's motion to dismiss the indictment pursuant to the Interstate Agreement on Detainers Act, Tex. Code Crim.Pro.Ann. art. 51.14, Article IV (Vernon 1979).[1]

The record reflects that appellant was transported to the Dallas County jail from the Federal Correctional Institute at Texarkana on February 15, 1980. Subsequent to this date, appellant was tried in federal court on charges of escape and sent to the federal penitentiary in Leavenworth, Kansas. In January, 1981, appellant was again transported to the Dallas County jail and was tried on the instant offense within 120 days after his arrival in Texas. Appellant now contends that a detainer was lodged against him on February 15, 1980, and that the failure to commence trial within 120 days of that date violated the terms of article 51.14, Article IV. We disagree. Inasmuch as appellant was the movant under this article, the burden rested upon him to prove that he was entitled to have the indictment dismissed. Since evidence was adduced at trial reflecting that both State *and* federal prisoners are housed in the Dallas County jail, appellant has failed to prove that he was surrendered to the State of

---

1. Tex.Code Crim.Pro.Ann. art. 51.14, Article IV (Vernon 1979) provides:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Paragraph (a) of Article V hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated; provided that the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the request; and provided further that there shall be a period of 30 days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

(b) Upon receipt of the officer's written request as provided in Paragraph (a) hereof, the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. Said authorities simultaneously shall furnish all other officers and appropriate courts in the receiving state who have lodged detainers against the prisoner with similar certificates and with notices informing them of the request for custody or availability and of the reasons therefor.

(c) In respect of any proceeding made possible by this article, *trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state*, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

(d) Nothing contained in this article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery as provided in Paragraph (a) hereof, but such delivery may not be opposed or denied on the ground that the executing authority of the sending state has not affirmatively consented to or ordered such delivery.

(e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Paragraph (e) of Article V hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

(Emphasis added).

Texas in February, 1980. Consequently, appellant has failed to prove that his subsequent transfer requires dismissal of the indictment in this case.

In his final two grounds of error appellant claims that the trial court erred in failing to require the State to disclose the names, addresses and telephone numbers of several witnesses to the offense and persons on the witness list who did not testify at trial. Appellant also contends that the prosecutor prohibited defense counsel from interviewing the State's rebuttal witnesses. Appellant concedes that the State was under no statutory duty to provide the addresses and telephone numbers of these witnesses, but urges entitlement to this information based on his constitutional right to a fair and impartial trial and the right to be adequately represented by counsel.

■■■ It is well settled that the prosecution is required to disclose evidence favorable to a defendant upon a proper request. This duty has been imposed upon the State under the due process clause and is founded on the constitutional requirement of a fair trial. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). A defendant's right to exculpatory evidence is predicated upon a specific request for favorable information in the possession of the State, if a substantial basis for claiming materiality exists. *Ransonette v. State,* 550 S.W.2d 36, 39 (Tex.Cr.App.1976); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The standard to be applied in cases of suppression or non-disclosure of evidence by the State is whether or not the testimony may have had an effect on the outcome of the trial. *Saunders v. State* 572 S.W.2d 944, 955–956 (Tex.Cr. App.1978). The key elements which must be shown are (1) suppression of evidence by the prosecution after a request for same by the defense; (2) the evidence's favorable character for the defense; and (3) the materiality of the evidence. *Ransonette v. State, supra* at 39; *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

■■ In the instant case appellant made only a general request for the names, address and telephone numbers of witnesses that were interviewed by the prosecution. Appellant made no showing of materiality or of the favorable character of this evidence. Failure to comply with these requirements justifies the trial court's refusal to grant appellant's discovery motion. *See Bell v. State,* 442 S.W.2d 716, 719 (Tex.Cr. App.1969). Further, the record reflects that the prosecutor did reveal the identity of Bonnie Turner, the only witness to his knowledge who could testify favorably to the accused. Appellant's counsel admitted that he knew the names of several witnesses to the offense, but was unable to locate them through due diligence. Counsel did not properly object to the testimony of the State's rebuttal witness and did not move for a continuance at any time during the trial. It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal the addresses and telephone numbers of all witnesses interviewed prior to trial.

■■ If appellant's ground of error can be sustained on appeal it must be under his contention that the failure of the State to disclose the addresses and telephone numbers of these witnesses violated his constitutional right to effective assistance of counsel. We hold it did not. It is fundamental that an attorney must acquaint himself with the facts of a case before he can render reasonably effective assistance of counsel. *See Ex parte Burns,* 601 S.W.2d 370, 371 (Tex.Cr.App.1980) (*En Banc*); *Flores v. State,* 576 S.W.2d 632, 634 (Tex.Cr. App.1978). The record in this case reflects that appellant's counsel interviewed all available witnesses and thoroughly investigated the case to the best of his ability. Further, there is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). Appellant makes no claim that he was surprised or otherwise prejudiced by the testimony of the State's rebuttal witnesses. No error is shown.

We also reject appellant's contention that the prosecution prohibited defense counsel from interviewing witnesses to be called on rebuttal. He cites *Gregory v. United States,* 369 F.2d 185 (D.C.Cir.1966) to support his assertion that this action deprived him of a fair and impartial trial. In *Florio v. State,* 532 S.W.2d 614, 617 (Tex. Cr.App.1976), the Court of Criminal Appeals specifically rejected the *Gregory* case as authoritative. Additionally, the record does not reflect any act on the part of the State to obstruct defense counsel's investigation. This contention is without merit.

The judgment is affirmed.