**Sammie OLIVER, Jr., Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–85–193–CR.**

Court of Appeals of Texas, Fort Worth.

May 21, 1987.

Michael Logan Ware, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., and David L. Richards, Asst. Dist. Atty., Fort Worth, for appellee.

Before FENDER, C.J., and HILL and LATTIMORE, JJ.

## OPINION

HILL, Justice.

Sammie Oliver, Jr. appeals his conviction by a jury for the offense of capital murder. *See* TEX.PENAL CODE ANN. sec. 19.03 (Vernon Supp.1987). Since the jury was deadlocked on the first special issue on punishment, the trial judge sentenced Oliver to life imprisonment as provided by TEX.CODE CRIM.PROC.ANN. art. 37.-071(e) (Vernon Supp.1987). Oliver presents six points of error.

We affirm.

In points of error numbers one and two, Oliver urges that the trial court erred in failing to sustain his motion to suppress the written statement which he gave following his arrest without a warrant, which he claims to be a violation of his rights under the fourth and fourteenth amendments to the United States Constitution, as well as a violation of chapter 14 of the Texas Code of Criminal Procedure.

█ Oliver argues that he was arrested without a warrant and without probable cause. The test applicable in determining whether there is probable cause for an arrest without a warrant is whether facts and circumstances within the officer's knowledge and of which he had reasonable trustworthy information was sufficient to warrant a prudent man to believe that the arrested person had committed or was committing an offense. *See Dotsey v. State,* 630 S.W.2d 343, 347 (Tex.App.—Austin 1982, no pet.).

The facts are well set out in the trial court's findings of fact numbers 1 through 9:

## FINDINGS OF FACT

1. The capital murder on which this prosecution is based occurred on December 11, 1982, during the course of an aggravated robbery at the Navajo Grocery in Lake Worth, Tarrant County, Texas. The crime was committed by two young black males wearing ski masks and brandishing a sawed-off shotgun. The two men were not immediately apprehended.

2. On December 17, 1982, an aggravated robbery occurred at a Stop 'N' Go store on Geddes Street in Fort Worth, Tarrant County, Texas. This crime was also committed by two black males wearing ski masks and brandishing a shotgun. The two men were not immediately apprehended.

3. On the morning of December 18, 1982, Fort Worth Police Officer Bobby Pate received a call from Dorothy Tucker, who had previously given him accurate information about criminal activity. Tucker told Pate she had been in a car with two black males the previous night when they stopped at the Stop 'N' Go on Geddes Street and committed a robbery. Tucker's description of the robbery matched what Pate knew to be the reported facts of the robbery.

4. Tucker told Pate that one of the robbers was Jimmy (Jamie) Davis; the other she knew only as Sammie. She also told Pate that Davis and Sammie had committed an earlier robbery in which someone was hit.

5. Later on December 18th, Tucker told Pate she could show him the automobile Jimmy Daivs [sic] had been driving when they committed the previous night's robbery. She led him to a brown El Camino with Ohio license tags, located on 19th Street in Fort Worth. The car was placed under surveillance, first by Pate, then by Fort Worth Police Officers J.J. Yale and J.D. Carraway.

6. Tucker then gave a sworn written statement naming Jimmy Davis and "Sammie" as the Stop 'N' Go robbers.

7. While Yale and Carraway watched the El Camino, they saw a black male walk up to the car, inspect it, then walk away. Caraway [sic] left the surveillance with Officer P.E. Fritz, who was in route to getting an arrest warrant signed for the arrest of Davis, now determined to [be] James Earl Davis. Yale stayed at the surveillance point until he was ad-

vised by radio that tactical squad officers, armed with the warrant, were on their way to the location. The warrant had been issued at aproximately [sic] 3:30 P.M. on December 18, 1982.

8. When the tactical squad officers arrived at the location, the El Camino was gone. However, one of the officers, John Lucas, saw the El Camino being driven nearby by a black male. Lucas had previously read the warrant for Davis, Tucker's sworn statement, and an offense report prepared [by] another police officer. He followed the El Camino until it stopped in front of a residence. He believed Davis was the driver, and he approached the driver to arrest him pursuant to the warrant. Some of his fellow officers also stopped and approached the El Camino.

9. Dorothy Tucker was a passenger in the El Camino. She told one of the officers that the driver of the El Camino was the "Sammie" she had told Pate was one of the two Stop 'N' Go robbers. This information was promptly relayed to Lucas, who arrested the man. Lucas asked him for identification and was given a pawn ticket with the defendant's name on it. Lucas then read the defendant his *Miranda* rights and took him to jail.

Based upon these facts, we find that there was probable cause for Oliver's arrest for the second Stop 'N' Go robbery.

■ Oliver's argument that the officers did not have probable cause is based on the opinion of *Glass v. State*, 681 S.W.2d 599 (Tex.Crim.App.1984). In *Glass*, an anonymous telephone caller told police that occupants of a brown-over-beige El Camino and a blue Fairlane were shooting at each other near an Austin intersection. When officers arrived at the intersection, nothing unusual was happening, but a few minutes later the officers stopped a brown-over-beige El Camino traveling near the intersection. The Court of Criminal Appeals held that there was no probable cause to arrest the occupants of the vehicle because an anonymous telephone call or letter, standing alone, will never provide sufficient facts that would authorize a warrantless arrest

or search which is, per se, unreasonable. The Court held that an investigative stop was not authorized either, because without a showing of time proximity between the anonymous report and the stop, there was no reasonable basis for a conclusion that the vehicle stopped was one of the vehicles involved in the shooting. In the case at bar, the individual who provided the information was a known individual, present at the scene of the arrest, who had, to the knowledge of the arresting officer, given detailed information previously about the offense in question. *See West v. State*, 720 S.W.2d 511, 512–13 (Tex.Crim.App.1986).

■ Oliver also asserts that the facts do not justify an arrest without warrant under any of the provisions of chapter fourteen of the Texas Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. art. 14.04 (Vernon 1977) provides that:

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

As we have noted, Dorothy Tucker had previously given accurate information and her information about this crime corresponded with the known facts of the offense. We therefore conclude that she is a credible person within the meaning of article 14.04.

■ Although there was time to procure a warrant for "Sammie," it was not reasonable to do so because the police did not know who the "Sammie" was that they were looking for until Dorothy Tucker identified Oliver as the "Sammie" who was involved in the offense. At that time there was no time to procure a warrant.

■ In considering the question of whether Oliver was about to escape, within the meaning of article 14.04, we will consider whether the information available to the arresting officers would justify the belief that Oliver would take flight if not placed in custody, and whether the conduct of the

officers themselves unnecessarily created the likelihood of such an action. *See West*, 720 S.W.2d at 517. Under the facts as we outlined above, Oliver would have known that the police were looking for his companion, James Earl Davis. He could have surmised that the investigation would soon center on him if the police talked to Davis. He was on a public street with access to the automobile he was driving. We hold that the facts show satisfactory proof that Oliver was about to escape, and that his warrantless arrest was justified by article 14.04 of the Code of Criminal Procedure. *See Carter v. State*, 713 S.W.2d 442 (Tex. App.—Fort Worth 1986, pet. pending). The record does not reflect any conduct of the officers which would have unnecessarily created the likelihood of Oliver's escape.

Oliver relies on the opinion of the Texas Court of Criminal Appeals in the cases of *Bell v. State*, 707 S.W.2d 52 (Tex.Crim.App. 1986) and *Self v. State*, 709 S.W.2d 662 (Tex.Crim.App.1986). In *Bell*, the defendant had been warned that the police were looking for him but remained in a bar in the same vicinity where he had been warned. In the case at bar, the defendant had just learned that his robbery companion was sought by the police, and he had his automobile available to him. We further note that the opinion in *Bell* has been withdrawn pending rehearing. In *Self*, the suspect was arrested without a warrant while walking down the street near his residence. Evidence showed that his residence was under surveillance for one and one-half hours before his arrest, that officers knew his full name, that a magistrate was available for issuing a warrant, but the officer in charge did not think about securing one. In the case at bar, the officers did not previously obtain a warrant because they only knew the defendant's first name. Once they learned his last name, there was no time to secure a warrant. We overrule points of error numbers one and two.

In point of error number three, Oliver argues that the trial court erred in denying his motion for mistrial or, alternatively, his motion for continuance because of evidence which he alleges was exculpatory, of mate-rial importance to the defense, and which the State actively, negligently, or inadvertently failed to disclose, all in violation of his rights under the fourteenth amendment.

Several months before trial, the trial court ordered the State to provide Oliver with any papers or evidence in its file which was in any way material to his innocence.

Shortly before trial, Oliver's counsel learned of a police report which stated that a witness told the police that her father-in-law had formerly managed the apartments where the victim used to live. She reportedly said that one of the police composite drawings of those participating in the offense looked exactly like Robert Fulton, who used to visit friends at the apartments. The report further reflected that her father-in-law stated that Robert Fulton was a friend of someone else who lived at the same apartment complex with the victim, who had owed money to the victim and had a double-barreled shotgun, who had fallen out with the victim because he owed the victim money, and who had threatened to "blow him away" if his path ever crossed that of the victim again. The information did not reveal any direct connection between Robert Fulton and the victim.

■ The rule is well established that the suppression by the prosecution of evidence favorable to the accused violates due process where the evidence is material either to guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Means v. State*, 429 S.W.2d 490, 495 (Tex.Crim.App.1968).

■ The standard to be applied in cases of suppression or nondisclosure of evidence by the State is whether the testimony may have had an effect on the outcome of the trial. *See Ransonette v. State*, 550 S.W.2d 36, 39 (Tex.Crim.App.1976); *Smith v. State*, 516 S.W.2d 415, 417 (Tex. Crim.App.1974). The key elements which must be shown are (a) suppression of evidence by the prosecution after a request by the defense; (b) the evidence's favorable character for the defense; and (c) the mate-

riality of the evidence. *See Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *Ransonette,* 550 S.W.2d at 39. The mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial does not establish "materiality" within the meaning of the third prong of the test. *See United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Ransonette,* 550 S.W.2d at 40.

The rule of *Brady v. Maryland* applies in three quite different situations: (1) the prosecution has knowingly used false or perjured testimony—reversal required " 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury' ... (2) ... the defense made a specific request for a particular item that was not disclosed—reversal is required if the suppressed evidence might have affected the outcome of the trial ... (3) ... the defense made only a general request ... [for] information ... that might be of an exculpatory nature—reversal is required only if the suppressed evidence 'creates a reasonable doubt that did not otherwise exist.' " *Sellers v. Estelle,* 651 F.2d 1074, 1077 (5th Cir.1981), *cert. denied,* 455 U.S. 927, 102 S.Ct. 1292, 71 L.Ed.2d 472 (1982); *see also Agurs,* 427 U.S. at 103–07, 96 S.Ct. at 2395–99, 49 L.Ed.2d at 349–52.

The test of materiality in a case where specific information has been requested by the defense is not necessarily the same as a case in which no such request has been made. Where the request is specific, it gives the prosecutor notice of exactly what the defense desires. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable. *See Agurs,* 427 U.S. at 107, 96 S.Ct. at 2399, 49 L.Ed.2d at 352.

Where there is no request at all or the request is for "any exculpatory information," only obviously exculpatory evidence in the hands of the prosecutor will create a duty to disclose. *See id.* Constitutional error has been committed only when the omitted evidence creates a reasonable doubt that did not otherwise exist. "This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Id.,* 427 U.S. at 112–13, 96 S.Ct. 2402, 49 L.Ed.2d at 355. In *Sellers,* the court held that a request for " 'the offense reports and any other written statements' " was a specific request for exculpatory evidence in the prosecutor's possession, because "[t]he petitioner could not have been more specific absent express knowledge of [the] reports," and reversed the conviction. *Sellers,* 651 F.2d at 1077.

In the case before us, appellant wants us to reverse his conviction because the prosecution had some information that Fulton, a friend of someone who had threatened the victim of the Lake Worth grocery store robbery/homicide, matched the description of the suspect and failed to disclose it to appellant's counsel after a request for disclosure of "[a]ny papers, objects or real evidence that is in the possession of the [State], which may in any way be material to the guilt or innocence of the Defendant."

In *Agurs,* the court held that a request for "anything exculpatory" is merely a general request. Since appellant only made a general request for exculpatory information, the prosecution was only required to disclose the additional information that would cast a reasonable doubt on the guilt of appellant. The information in possession of the State certainly did not create a reasonable doubt as to the guilt or innocence of the appellant. Unlike *Sellers,* the information was not an admission of guilt, by one other than appellant, but merely that a person who looked like the appellant was a friend of a person who had threatened the victim of the Lake Worth robbery. Moreover, appellant had been positively identified by a witness as one of

the robbers. In addition, Oliver had made a voluntary written confession and it did not appear that his confession was the result of any type of coercion on the part of the State. We, therefore, hold that the prosecutor's failure to tender the information regarding Robert Fulton to the defense did not deprive appellant of a fair trial as guaranteed by the due process clause of the fifth amendment. We overrule point of error number three.

In his point of error number four, Oliver maintains that the trial court erred in not giving his third attorney ten days in which to prepare for trial, which he maintains is required by TEX.CODE CRIM. PROC.ANN. art. 26.04(b) (Vernon 1966).

After the information concerning Robert Fulton was disclosed by the State, the trial court appointed Mike Ware as a third attorney for Oliver to assist the defense in investigating the information. This appointment came after the jury had been selected, before the beginning of testimony. The trial court denied Mr. Ware's request for ten days preparation.

Article 26.04 of the Texas Code of Criminal Procedure provides that counsel appointed for an indigent defendant is entitled to ten days to prepare for trial. At the time Mr. Ware was appointed to represent him, Oliver had two other counsel representing him, one of whom had been appointed to represent him more than two years prior to trial, and another who had been active in the case for several months prior to trial. We have previously held that the failure to afford appointed counsel the statutory ten-day period does not constitute reversible error where the accused has other counsel who has had adequate time to prepare for trial. *See Sheppard v. State*, 634 S.W.2d 953, 955 (Tex.App.—Fort Worth 1982, no pet.). We overrule point of error number four.

In points of error five and six appellant contends that the trial court erred in denying his motion to dismiss for lack of speedy trial under TEX.CODE CRIM.PROC.ANN. art. 32A.02 (Vernon Pamp.Supp.1987) and the sixth amendment to the United States Constitution.

Article 32A.02 requires that the trial court grant a motion to set aside the indictment if the State is not ready in a felony case within 120 days of the commencement of a criminal action.

The criminal action commenced on December 18, 1982 when appellant was arrested. Appellant was continuously incarcerated up until the hearing on his motion to dismiss for lack of speedy trial on April 23, 1985. Appellant filed a motion for continuance in January 1985, after his appointed counsel had died and a new counsel had been appointed. An indictment charging him with the offense of capital murder was returned by a Tarrant County grand jury on January 20, 1983. The State's written announcement of ready was filed January 31, 1983. Appellant was reindicted on April 9, 1985 and the State's announcement of ready was filed the same day. Prior to reindictment, Oliver's indictment read as follows, through count one:

> IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:
>
> Comes now the undersigned Assistant District Attorney of Tarrant County, Texas, in behalf of the State of Texas, and presents in and to the * * * of Tarrant County, Texas that * * SAMMIE OLIVER JR hereinafter called Defendant, in the County of Tarrant and State aforesaid, on or about the 11TH day of DECEMBER 1982, did THEN AND THERE INTENTIONALLY CAUSE THE DEATH OF AN INDIVIDUAL, JOE DERRYBERRY, BY SHOOTING HIM WITH A FIREARM, AND THE SAID SAMMIE OLIVER, JR. WAS THEN AND THERE IN THE COURSE OF COMMITTING AND ATTEMPTING TO COMMIT THE OFFENSE OF ROBBERY OF THOMAS SMITH, THE OWNER THEREOF....

Upon reindictment the phrase "the owner thereof" was deleted. Oliver was convicted under count one of the indictment.

Appellant contends that the State's announcement of ready is nothing more than a "pro forma exercise by the District Attorney's office to avoid the responsibilities and

liabilities imposed by the Speedy Trial Act."

A timely announcement of "ready" is a prima facie showing of the State's readiness for trial as required by the Speedy Trial Act. *See Phillips v. State,* 659 S.W.2d 415, 419 (Tex.Crim.App. 1983); *see also* TEX.CODE CRIM.PROC. ANN. art. 32A.02. When the State announces readiness for trial during the statutory time period applicable to the case, the burden shifts to the defendant to rebut the prima facie showing by producing evidence of the State's unpreparedness for trial. *See Smith v. State,* 659 S.W.2d 828, 830 (Tex.Crim.App.1983). If the applicable statutory time period has expired and the accused invokes the Act, the State must demonstrate both that it was then ready and had been ready for trial at all times within the statutory period, or the State must establish that sufficient periods of time were excludable under the Act in order to bring its announcement of readiness within the statutory period. *See id.*

The Speedy Trial Act addresses itself to prosecutorial delay and not to delay resulting from the congestion of the trial court's dockets or the judicial process as a whole. *See Phillips,* 651 S.W.2d at 746; *Barfield v. State,* 586 S.W.2d 538, 540 (Tex.Crim.App.1979). However, the Speedy Trial Act does not require that the State be ready with a perfect indictment. Even though the defect in the charging instrument is such that it would require a mistrial or reversal of a conviction, the presence of such a defect does not necessarily indicate that the State was not ready for trial. *See Ward v. State,* 659 S.W.2d 643, 647 (Tex.Crim.App.1983). A defective charging instrument is treated in much the same manner as other causes for trial delay with the nature of the defect and the length and reasonableness of the delay weighed in determining whether or not the State was, in fact, not prepared for trial. *See id.*

Evidence in rebuttal to a prima facie showing by the State of conformity to the Speedy Trial Act can be from any source including cross-examination of those responsible for preparing the State's case and may consist of a demonstration that the State did not have a key witness or piece of evidence available by the last day of the applicable time limit. *See id.* Counsel for the defense questioned the three prosecutors in the case, Mr. Gallagher, Mr. Bellows and Mr. Moore, as to the readiness of the State. They testified that prior to filing the State's written announcement of ready on both occasions, they had communicated with all the State's witnesses. Mr. Gallagher testified he did not sign written announcements of ready on behalf of the State until he was ready for the case to be set for trial. Mr. Bellows, the person who signed the announcement of ready filed in connection with the reindictment, testified he was the attorney "in control" of the case at the time of the reindictment and that the State had been continuously ready for trial. The prosecutors also testified that the major difference between the two indictments was certain surplusage language in the first indictment as to ownership of property stolen during the Lake Worth robbery. The appellant did not call Ms. Moore who filed the State's first announcement of ready and failed to otherwise establish that the State was not ready for trial. Appellant failed to prove that the words "the owner thereof" in the first indictment made it impossible for the State to prosecute the case when they first announced ready. The prosecutors also testified that they could have prosecuted the case on the first indictment and were willing to do so. After reviewing the record in regard to defendant's motion to dismiss for failure to grant a speedy trial under article 32A.02 of the Texas Code of Criminal Procedure, we conclude that there is no evidence indicating that the State could not prosecute the case when they announced ready, or that the fact that appellant was not tried until 934 days after his arrest was the result of the State's negligence. We overrule point of error number five.

Appellant further contends that his right to a speedy trial under the sixth amendment to the United States Constitution was violated. In *Barker v. Wingo,* the

United States Supreme Court has adopted a balancing test to determine whether a defendant's sixth amendment right to a speedy trial has been violated. The four factors generally considered are: (1) length of the delay; (2) reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Phipps v. State*, 630 S.W.2d 942, 946 (Tex.Crim.App.1982); *Green v. State*, 555 S.W.2d 738, 741 (Tex. Crim.App.1977); *Harris v. State*, 489 S.W.2d 303, 308 (Tex.Crim.App.1973); *Courtney v. State*, 472 S.W.2d 151, 153 (Tex.Crim.App.1971).

### LENGTH OF THE DELAY

■ A lengthy delay is the triggering mechanism of a speedy trial claim. Without a delay, there is no necessity to inquire into the other factors. *See Barker*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. No precise length of delay automatically constitutes a violation of the right to a speedy trial in every single case. Each case is examined on an ad hoc basis. *See Phipps*, 630 S.W.2d at 946.

■ In the instant case, there was a delay of two years and seven months from the time of appellant's arrest to the time of trial during which time appellant was continuously incarcerated. A delay of two years and seven months is not, per se, a deprivation of the appellant's right to a speedy trial, but is a fact requiring further consideration of the appellant's claim. *See McCarty v. State*, 498 S.W.2d 212, 215 (Tex.Crim.App.1973); *Prescott v. State*, 696 S.W.2d 693, 695 (Tex.App.—Fort Worth 1985, pet. granted).

### REASON FOR THE DELAY

■ In considering the reason for the delay it is said by the Supreme Court that different weight should be assigned to different reasons. Deliberate attempts to hamper the defense weigh heavily in favor of a violation of the sixth amendment to a speedy trial, and circumstances such as missing witnesses will justify the delays, but in most instances the delay will be caused by more neutral reasons such as overcrowded court dockets which are weighed less heavily against the State. *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; *McCarty*, 498 S.W.2d at 215. The record does not reflect any reason for the long delay, nor whether it can be attributed either to the State or the appellant. In January 1985, appellant filed a motion for continuance, but this was necessary to allow his newly appointed attorney time to prepare for trial, after one of appellant's appointed counsel had died in a car accident. The record does reflect that, prior to January 1985, no other motions for continuance were filed by either side.

### ASSERTION OF HIS RIGHT

A review of the record reveals that appellant did not assert his right for over two years until April 1985. In *Barker*, the Supreme Court wrote that a defendant's assertion of his speedy trial right was entitled to strong evidentiary weight when determining whether the defendant was deprived of this right; however, delays in raising the speedy trial objection can effectively waive the right. *See Barker*, 407 U.S. at 531–32, 92 S.Ct. at 2192–93, 33 L.Ed.2d at 117–18. The failure to assert the right "dims the claim of harm." *See Turner v. State*, 504 S.W.2d 843, 845 (Tex. Crim.App.1974). Further, we need to indicate that the appellant took no action to assert his right to a speedy trial, but moved that the indictment be dismissed for lack of a speedy trial. In dealing with a similar case, the Court of Criminal Appeals stated: "[a]lthough a motion to dismiss notifies the State and the court of the speedy trial claim, a defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his claim." *Phillips v. State*, 650 S.W.2d 396, 401 (Tex.Crim.App. 1983); *see also McCarty*, 498 S.W.2d at 216.

### PREJUDICE TO THE DEFENDANT

■ Although a showing of "actual prejudice" is not required in Texas, it is the

defendant's burden to make a showing of prejudice. *See Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); *Smith v. State,* 530 S.W.2d 827 (Tex.Crim. App.1975); *Archie v. State,* 511 S.W.2d 942 (Tex.Crim.App.1974). A mere passage of time is not prejudicial and will not result in a denial of speedy trial. *See United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *see also Grayless v. State,* 567 S.W.2d 216 (Tex.Crim.App.1978) (two years and nine months); *Easley v. State,* 564 S.W.2d 742 (Tex.Crim.App.1978) (five years); *Swisher v. State,* 544 S.W.2d 379 (Tex.Crim.App.1976) (three years and eight months); *Smith v. State,* 530 S.W.2d 827 (Tex.Crim.App.1975) (two years and four months); *Harris v. State,* 489 S.W.2d 303 (Tex.Crim.App.1973) (fifteen months). There are three interests to be considered when determining prejudice to the defendant. These are: (1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the delay will impair the ability of the accused to defend himself. *See Phipps,* 630 S.W.2d at 946; *Green,* 555 S.W.2d at 742; *Harris,* 489 S.W.2d at 308.

■ Oliver suffered lengthy pretrial incarceration, as we have previously noted, with the anxiety and concern which go with that, especially when one is charged with capital murder. There is no showing of any actual prejudice to his defense caused by the delay.

■ Considering all of the factors discussed above, we find that there was no violation of Oliver's sixth amendment right to a speedy trial.

Oliver relies heavily on the case of *Hull v. State,* 699 S.W.2d 220 (Tex.Crim.App. 1985). We note that in that case Hull actively and persistently sought to get his case tried. As we have noted, Oliver did not actively and persistently ask to get his case tried. Instead he waited years before seeking dismissal of the indictment for lack of a speedy trial. We overrule point of error number six.

The judgment of the trial court is affirmed.