**David Howard PHIPPS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 61353.**

Court of Criminal Appeals of Texas, Panel No. 2.

April 14, 1982.

 

Terry D. Langehennig, Hereford, for appellant.

Barry E. Blackwell, Sp. Prosecutor, Dumas, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and DALLY and W. C. DAVIS, JJ.

OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for burglary of a building. The jury assessed punishment at 15 years confinement and a fine of $2,500. The appellant in his second ground of error contends the evidence is insufficient to support the conviction.

On October 23 and 24, 1974, the Jake Diel Dirt and Paving Company in Hereford, Texas, was burglarized and a quantity of antifreeze and truck tires were stolen. The appellant and Fred Bevill were originally indicted together for the offense. The record reveals that Mark Grimsley, the maintenance superintendent for Jake Diel Dirt and Paving Company, testified that on October 23, 1974, he noticed that the locks on two vans, located adjacent to the company warehouse, had been cut. Grimsley discovered that a quantity of antifreeze was missing from the storage vans. Subsequently, on the morning of October 25, 1974, Grimsley found that a number of new truck tires were missing from a storage room within the warehouse. The padlock to the storage room door had been cut to gain entry. Additionally, a number of pickup tires were missing from the storage vans located adjacent to the warehouse.

After being notified of the burglary, Deputy Dean Butcher, of the Deaf Smith County Sheriff's Office, investigated the incident. Grimsley and Deputy Butcher discovered tire tracks running from the warehouse to the storage van. Deputy Butcher made plaster of paris impressions of the tire tracks.

Julian Gandy, an employee at Big Daddy's Truck Stop, located next door to Jake Diel's, testified that he repaired a flat tire on a Ryder truck at about 6:00 p. m. on October 24, 1974. Gandy identified the appellant as the person driving the truck.

Jake Diel and Grimsley testified that Bevill had worked at Jake Diel's company and that during the time Bevill was employed by Diel, Bevill had access to all the working

areas and knew where various equipment and keys were kept. Bevill had quit his job at Diel's in July of 1974.

James Colwell, rental account manager at the Ryder Truck Rental Agency in Amarillo, Texas, identified State's Exhibit No. 1, as a Ryder rental contract executed on October 24, 1974 by Fred Bevill. Colwell stated that two other people accompanied Bevill when he rented the truck; however, Colwell could not positively identify the appellant as being with Bevill.

Deputy Burton testified that while in Oklahoma City, Oklahoma investigating the burglary, he was informed by Joe Robinson, Jr., District Rental Manager of Ryder Truck Rental in Oklahoma City, that a Ryder truck rented by Fred Bevill was returned on October 25, 1974. Robinson identified the appellant as being present with another man when the truck was returned. Robinson explained that he inspected the truck and noticed what he described as tire marks on the interior walls of the truck, although he could not discern when the marks had been made.

Deputy Burton stated that he examined the truck, returned by Bevill, and found black marks on the inside of the truck, which he testified could have been made by tires. Deputy Burton also took impressions on cardboard of the rear dual tires of the truck. Deputy Burton stated that the tire prints he took from the Ryder rental truck were identical to the plaster prints made near the warehouse.

June Bevill Bartlett, Bevill's ex-wife, testified that approximately one week before October 24, 1974, she was in the company of the appellant and Bevill at her residence in Oklahoma City. Bartlett stated she heard the appellant and Bevill discuss going to Hereford, Texas, to Jake Diel's Construction Company to take some antifreeze. The appellant and Bevill left her residence in the appellant's pickup truck, to return later with a quantity of antifreeze. Bartlett stated the antifreeze was stored behind her residence.

Bartlett recalled that on the morning of October 24, 1974, she heard the appellant, Bevill and a man named Larry Paschal discussing again coming to Hereford, Texas to take tires from Jake Diel's Construction Company. The appellant and Bevill left Bartlett's residence in Bevill's Dodge Charger and returned some time later in a Ryder truck. Bartlett stated that she accompanied the appellant and Bevill when they returned the truck. Bartlett also testified that she observed the appellant, Bevill and another man in possession of some amount of cash.

Although the State in the instant case relies upon circumstantial evidence to sustain the conviction, a review of the evidence must be made in a light most favorable to the jury's verdict. See *Vaughn v. State*, 607 S.W.2d 914 (Tex.Cr.App.1980); *Miller v. State*, 566 S.W.2d 614 (Tex.Cr.App.1978).

■ A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused. See *Romo v. State*, 593 S.W.2d 690 (Tex.Cr.App.1980); *Owens v. State*, 576 S.W.2d 859 (Tex.Cr.App.1979).

In the instant case, the State offered proof of a burglary where tires and cases of antifreeze were taken. Bevill's ex-wife testified that the appellant and Bevill discussed stealing antifreeze from Jake Diel's. Bevill and the appellant later returned to Bevill's residence with a quantity of antifreeze, very near to the time the instant burglary occurred. Tire tracks found at the scene of the burglary were identified as those made by a truck rented by Bevill.

The testimony of Gandy placed the appellant at a gas station adjacent to the scene of the burglary close to the time the tires were taken. The appellant was identified as the man driving a rental truck that was traced to the scene of the burglary. When the appellant and another man returned the truck, Robinson noticed tire marks on the interior walls of the vehicle.

■ We find the cumulative weight of the evidence in the instant case is sufficient to sustain the jury's verdict.

In his first ground of error the appellant contends he was denied a speedy trial as guaranteed by Article 32A.02, Vernon's Ann.C.C.P.; the Sixth Amendment to the United States Constitution; Article I, Section 10 of the Texas Constitution, and Article 1.05, Vernon's Ann.C.C.P.

A hearing was held on appellant's motion to set aside the indictment for the failure to accord him a speedy trial. The record reveals that the appellant was originally arrested on October 26 or 27, 1974, in Oklahoma City, Oklahoma, on a warrant for the Texas burglary offense. The appellant was released after posting a $2,000 bond in Oklahoma. Subsequently, on January 14, 1975, the appellant voluntarily came to Hereford, Texas to determine the exact nature of the charges, where he was arrested by Deaf Smith County Sheriff's officers. The appellant posted a $1,000 bond and returned to Oklahoma the same night. Appellant was indicted on three separate occasions, the first indictment being handed down by the Deaf Smith County Grand Jury on February 3, 1975.

In the latter part of 1975, the appellant was arrested on a criminal charge in McIntosh County, Oklahoma. The appellant remained in the McIntosh County jail for 187 days pending trial. While the appellant remained in custody in Oklahoma, Texas authorities contacted the McIntosh County Sheriff and asked that a detainer be placed on the appellant. Appellant was subsequently convicted and sentenced to four years confinement in the Oklahoma State Penitentiary. Appellant was transferred to the Oklahoma State Penitentiary on April 27, 1976, where he remained until his release on September 2, 1977.

Deputy Burton testified that it was his understanding that the McIntosh County Sheriff would transfer the hold on the appellant to the Oklahoma Department of Corrections. The record reveals, however, that no such hold was placed on the appellant while he remained in the Oklahoma penitentiary. The appellant testified that he had prepared a speedy trial motion while in prison but never filed the motion because he learned there was no detainer on him.

In March or April of 1978, after his release from prison, the appellant was again arrested on the Texas burglary charge and placed in jail in Oklahoma City. After spending 47 days in jail, the appellant posted bond and went to Idaho. Appellant admitted jumping the Oklahoma appearance bond.

The appellant was arrested for a third time on August 7, 1978 in Oregon, where he spent thirty days in jail before he was returned to Texas on September 7, 1978.

The State, by way of letter to the trial court, announced ready on October 3, 1978. The case was originally set for trial on November 14, 1978. A pre-trial hearing scheduled for November 9, 1978 was not held, but rather a grand jury was convened to re-indict the appellant for a third time. On November 13, 1978, the day before the instant case was scheduled for trial, the Deaf Smith County District Attorney, although having announced ready on October 3, 1978, filed a motion requesting a continuance on the grounds that he was disqualified.

On November 20, 1978, the appellant filed a motion to dismiss on the grounds he had been denied his right to a speedy trial as guaranteed by the Sixth Amendment of the United States Constitution and Articles I, Section 10 of the Texas Constitution. The appellant also maintained he had not been brought to trial within 120 days of July 1, 1978, the effective date of Article 32A.02, Vernon's Ann.C.C.P. A pre-trial hearing was held on November 24, 1978 where appellant's pre-trial motions were considered and the State again entered an announcement of ready. The appellant's motion to dismiss was denied, the first two indictments were dismissed, and the case, pursuant to the third indictment, was set for trial on December 27, 1978.

We will first consider the appellant's contention that his constitutional rights to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution were violated. See *Wade v. State*, 572 S.W.2d 533, 535 (Tex.Cr.App. 1978).

█ This Court has adopted a balancing test to determine whether a defendant's Sixth Amendment right to a speedy trial has been violated. The four factors generally considered are: (1) length of delay; (2) reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. See *Green v. State*, 555 S.W.2d 738 (Tex.Cr.App.1977); *Harris v. State*, 489 S.W.2d 303 (Tex.Cr.App.1973); *Courtney v. State*, 472 S.W.2d 151 (Tex.Cr. App.1971).

Applying the "balancing test" to the instant case, we find there was a delay of four years and two months from the time of the appellant's first arrest, for the instant charge, to the time of trial. Although, prior to July 1, 1978, there was no precise length of delay which would per se require a finding of a speedy trial violation, the delay in the instant case certainly necessitates further consideration of appellant's claim. See *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Turner v. State*, 545 S.W.2d 133 (Tex.Cr.App.1976) *Smith v. State*, 530 S.W.2d 827 (Tex.Cr.App. 1975).

The reasons for the long delay in the instant case can be attributed mutually to the actions of the appellant and the State. From October 24, 1974 until March of 1978, a period of approximately four years, the appellant was incarcerated in an Oklahoma prison. The appellant, therefore, was not responsible for the delay prior to his release from prison. The State knew of the appellant's whereabouts but made only feeble attempts to place a detainer on or extradite the appellant from Oklahoma. We point out, however, that there is no assertion of a deliberate effort by the State prior to March, 1978 to delay the trial.

Following his second arrest for the Texas burglary charge, in March or April, 1978, appellant jumped his Oklahoma appearance bond and fled to Oregon. This action by the appellant delayed his trial until he was again arrested on August 7, 1978 in Oregon.

We next consider whether the appellant asserted his right to a speedy trial. A review of the record reveals that during the time of his incarceration in Oklahoma, the appellant made no assertion of his right to a speedy trial. The appellant remained silent for over four years about his right to a speedy trial. Waiting until one month before his trial, the appellant finally asserted his right to a speedy trial.

In *Barker v. Wingo*, supra, the Supreme Court wrote that a defendant's assertion of his speedy trial right was entitled to strong evidentiary weight when determining whether the defendant was deprived of this right. The Court, however, also emphasized that a defendant's failure to assert the right will make it difficult to prove he was denied a speedy trial. See *Barker v. Wingo*, supra.

█ The final factor we must consider is that of prejudice to the appellant resulting from the delay. Generally, there are three interests to be considered when determining prejudice to the defendant. These are: (1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the delay will impair the ability of the accused to defend himself. See *Green v. State*, 555 S.W.2d 738 (Tex.Cr.App.1977); *Harris v. State*, 489 S.W.2d 303 (Tex.Cr. App.1973). In this case, we are primarily concerned with whether the appellant's defense was impaired by the delay under the instant facts.

█ This Court requires that the accused make some showing of prejudice resulting from the delay. See *Green v. State*, supra;

*Courtney v. State*, 472 S.W.2d 151 (Tex.Cr. App.1971). The appellant testified that he was unable to locate two alibi witnesses because of the undue delay of his trial. This Court in *Harris v. State*, supra, determined that before such a contention will amount to "some showing of prejudice", the appellant must show that the witnesses were unavailable, that their testimony might be material and relevant to his case, and that he has exercised due diligence in his attempt to find them and produce them for trial. Even if it be conceded that the testimony of the missing witnesses was material to the instant case, the appellant has not shown diligence in procuring the witnesses as the record fails to indicate that the witnesses were subpoenaed. See *Harris v. State*, supra; *Peoples v. State*, 477 S.W.2d 889 (Tex.Cr.App.1972).

■ Considering the aforementioned factors and applying the balancing test of *Barker v. Wingo*, supra, we conclude the appellant was not denied his Sixth Amendment guarantee of a speedy trial.

We turn next to a consideration of appellant's assertion that he was denied a speedy trial as guaranteed by Article 32A.02, Vernon's Ann.C.C.P.[1] This Court in *Wade v. State*, supra, held that the time limits set forth in Article 32A.02, supra, began to run on July 1, 1978, for all criminal cases then pending on the trial court's docket. In the instant case, more than 120 days had elapsed since July 1, 1978, at the time the appellant filed his motion to set aside the indictment. On November 24, 1978, a hearing was held to consider appellant's motion to dismiss the indictment, at which time the State announced ready for trial.

■ The State's announcement of ready was a prima facie showing that the provision of the statute was complied with. See *Fraire v. State*, 588 S.W.2d 789 (Tex.Cr. App.1979); *Barfield v. State*, 586 S.W.2d 538 (Tex.Cr.App.1979). The defendant, however, may rebut the State's declaration with evidence demonstrating that in fact the State was not ready for trial, thus requiring the State to prove there were excludable periods of delay that would extend the initial time limitation.[2] See *Pate v. State*, 592 S.W.2d 620 (Tex.Cr.App.1980); *Barfield v. State*, supra.

In the instant case, the state showed that from May, 1978 when the appellant jumped his Oklahoma appearance bond until his arrest on August 7, 1978 in Oregon, the Texas authorities were unaware of the appellant's whereabouts. The period of time from July 1, 1978 to August 7, 1978 is therefore excluded from the computation of the 120 days within which the State must have been ready for trial. The State's announcement of ready on November 24, 1978 came at 110 days from August 7, 1978, well within the 120 day limitation prescribed by Article 32A.02, supra. Further, the appellant presented no evidence that the State was not actually ready to go to trial on November 24, 1978.

We hold that the requirements of the Speedy Trial Act were fulfilled and the State was shown to have been ready for trial within the prescribed 120 days.

The judgment is affirmed.

1. Article 32A.02, Vernon's Ann.C.C.P. provides that the State must be ready for trial within 120 days of the commencement of a felony criminal action.

2. Article 32A.02, Sec. 4, supra, provides, in pertinent part, as follows:

"In computing the time by which the State must be ready for trial, the following periods shall be excluded:

   \*      \*      \*      \*      \*      \*

(4) A period of delay resulting from the absence of the defendant because his location is unknown and:

(A) he is attempting to avoid apprehension or prosecution; or

(B) the state has been unable to determine his location by due diligence;

(5) A period of delay resulting from the unavailability of the defendant whose location is known to the state but whose presence cannot be obtained by due diligence or because he resists being returned to the state for trial..."