

IN THE
TENTH COURT OF APPEALS

No. 10-08-00021-CR

JAMES BRADBURRY,

                                                            Appellant

 v.

THE STATE OF TEXAS,

                                                            Appellee

From the 278th District Court
Walker County, Texas
Trial Court No. 22901

MEMORANDUM OPINION

Appellant James Bradburry was convicted of the offense of Aggravated Assault with a Deadly Weapon and sentenced to twenty-five (25) years confinement in the Texas Department of Criminal Justice-Institutional Division. TEX. PEN. CODE ANN. § 22.02 (Vernon Supp. 2007). Bradburry's sole issue on appeal is the trial court's denial of his motion to dismiss his indictment for the denial of his right to a speedy trial. We affirm.

The Sixth Amendment to the United States Constitution guarantees an accused the right to a speedy trial. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).

(citing *Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002)). Supreme Court precedent requires state courts to analyze federal constitutional speedy-trial claims "on an *ad hoc* basis" by weighing and then balancing the four *Barker v. Wingo* factors: 1) length of the delay, 2) reason for the delay, 3) assertion of the right, and 4) prejudice to the accused. *Barker v. Wingo*, 407 U. S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice. *Id*. The four factors are related and must be considered together along with any other relevant circumstances. *Id.* at 281. Courts must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed. *Id*.

*Standard of Review*

"In reviewing the trial court's ruling on appellant's federal Constitutional speedy trial claim, we apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a de novo standard for the legal components." *Zamorano*, 84 S.W.3d at 648. Under the abuse of discretion standard, appellate courts defer not only to a trial judge's resolution of disputed facts, but also to his right to draw reasonable inferences from those facts. *Cantu*, 253 S.W.3d at 282. The trial judge may completely disregard a witness's testimony, based on credibility and demeanor evaluations, even if that testimony is uncontroverted. *Id*. And all of the evidence must be viewed in the light most favorable to his ultimate ruling. *Id*.

As a general rule, an appellate court reviewing a trial court's ruling on a motion to dismiss for want of a speedy trial must do so in light of the arguments, information, and evidence that was available to the trial court at the time it ruled. *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).

*The Hearing*

Bradburry was indicted by the grand jury on August 16, 2005 for an offense that occurred on or about January 19, 2005. On June 8, 2007, Bradburry filed his first motion for speedy trial, requesting a trial date no later than August 31, 2007. There was no request for a hearing on this motion. On September 11, 2007, Bradburry filed a motion to dismiss the indictment for failure to grant him a speedy trial. On October 5, 2007, the trial court had a hearing on Bradburry's motion to dismiss the indictment. The trial court denied Bradburry's motion, but stated its intent to set Bradburry's case for trial in December of 2007. Bradburry then filed a request for trial setting in December of 2007. Bradburry's trial by jury actually commenced on November 5, 2007.

*Length of the Delay*

The length of the delay is measured from the time the defendant is arrested or formally accused. *Dragoo*, 96 S.W.3d at 313. This factor is, to some extent, a triggering mechanism, so that a speedy trial claim will not even be heard until passage of a period of time that is, on its face, unreasonable under the circumstances. *Id*. (citing *Doggett v. United States*, 505 U. S. 647, 651-652, 120 L. Ed. 2d 520, 112 S. Ct. 2686 (1992); *Barker v. Wingo*, 407 U.S. at 530). In general, a delay approaching one year is unreasonable enough to trigger the *Barker* inquiry. *Dragoo*, 96 S.W.3d at 313.

It is apparent from the record that there is no dispute that the case had been pending for over two years. In fact, at the hearing on the motion to dismiss, the State's attorney references being ready to "take the hit" for the case being over two years old.

A delay of over two years is long enough to trigger the *Barker* inquiry and weighs against the State.

*Reason for the Delay*

When a court assesses the second *Barker* factor, "different weights should be assigned to different reasons" for the delay. *Dragoo*, 96 S.W.3d at 316. A valid reason for the delay should not be weighed against the government at all. *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (citing *Barker v. Wingo*, 407 U.S. at 531) (valid reason for the delay "should serve to justify appropriate delay")). Delay which is attributable in whole or in part to the defendant may even constitute a waiver of a speedy trial claim. *Id*. (citing *Dickey v. Florida*, 398 U.S. 30, 90 S. Ct. 1564, 26 L. Ed. 2d 26, 38 (1970) (Brennan, J., concurring) (defendant may be "disentitled to the speedy-trial safeguard in the case of a delay for which he has, or shares, responsibility")). While it is not the sole responsibility of the defendant to protect his right to a speedy trial, the defendant has some affirmative obligation to assert his right to a speedy trial. *Barker v. Wingo*, 407 U.S. at 527).

The only reasons given for the delay by the State were that the trial court's docket as a traveling judge makes it difficult to get a setting and that the prosecutor had been unavailable for a period of approximately four months in early 2007. A crowded

court docket is not a valid reason for delay, and must be weighted against the State, although not heavily. *Shaw*, 117 S.W.3d at 890.

There are three docket entries in the clerk's record during the relevant time period. On November 4, 2005, it appears but is not clear from the record that Bradburry was arraigned and pled not guilty. The other two entries are dated March 3, 2006, and December 1, 2006, but the only annotation is "Case reset." The next setting was the hearing on Bradburry's motion to dismiss. The record is silent as to the reasons for the resets or whether they were agreed resets.

It is the State's burden to justify the length of the delay, which it did not do. Thus, this factor weighs against the State, although not heavily. *Shaw*, 117 S.W.3d at 889-890.

*Assertion of the Right*

A defendant has the responsibility to assert his right to a speedy trial. *Cantu*, 253 S.W.3d at 283. The lack of a timely demand for a speedy trial strongly indicates that a defendant did not really want a speedy trial and that he was not prejudiced by the lack of one. *Dragoo*, 96 S.W.3d at 316. Inaction weighs more heavily against a violation the longer the delay becomes. *Id*. Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one. *Cantu*, 253 S.W.3d at 283.

Bradburry filed a motion for speedy trial on June 8, 2007, which requested a trial setting no later than August 31, 2007, approximately within two and a half months of the filing date. There is no reference in the record as to whether this request was

brought to the trial court's attention. The motion itself has no request for a hearing. Bradburry then filed his motion to dismiss the indictment based on the denial of a speedy trial on September 11, 2007, which was set for hearing on October 5, 2007.

As evidence of his readiness for trial, Bradburry points to his boilerplate pretrial motions filed as early as December 20, 2005. What these motions also demonstrate, however, is that Bradburry was represented by counsel since at least that date, and there is no question raised as to the competency of his counsel.

The short length of time specified in Bradburry's motion to set Bradburry's case for trial was unreasonable. Additionally, Bradburry's failure to request a hearing on his speedy trial motion or to otherwise demonstrate that it was brought to the trial court's attention created a situation where Bradburry could quietly sit back and await the passage of the deadline he set prior to demanding a dismissal.

It is also important to note that once the motion to dismiss was brought to the trial court's attention, the hearing was held in less than a month after the motion was filed, and Bradburry's trial commenced less than two months after the filing of the motion to dismiss and approximately one month after the hearing on the motion to dismiss. In view of the delay in which it is reasonable for the trial court to infer that Bradburry quietly acquiesced, this factor weighs against Bradburry. *Dragoo*, 96 S.W.3d at 314-315.

*Prejudice to the Accused*

When a court assesses the final *Barker* factor, it must do so in light of the interests of defendants the speedy trial right was designed to protect: (1) to prevent oppressive

pretrial incarceration; (2) to minimize the accused's anxiety and concern; and (3) to limit the possibility that the accused's defense will be impaired. *Barker v. Wingo*, 407 U.S. at 532; *Dragoo*, 96 S.W.3d at 316.

Bradburry was serving a life sentence in prison at the time of the offense in the instant case. Without more, the trial court could reasonably infer that there was no oppressive pretrial incarceration. Bradburry put forth no evidence of any at the hearing on the motion to dismiss. This sub-factor weighs against Bradburry.

Nor did Bradburry present any evidence of anxiety or concern regarding his impending trial; therefore, this sub-factor weighs against him.

At the hearing on the motion to dismiss, Bradburry presented one witness who was the investigator for his case. That investigator presented documents of nine potential witnesses who had been subsequently discharged from incarceration and whose whereabouts were at that time unknown. These individuals were persons who were believed to have witnessed the offense. The dates of release were varied, with at least five of them being from 2006 to 2007. However, the investigator did not begin his search for these witnesses until September of 2007, after his arbitrary trial deadline and less than one month before the hearing on the motion to dismiss. There was also no testimony as to how these individuals would aid in Bradburry's defense.

In order to demonstrate prejudice, Bradburry must show not only that the witnesses were unavailable, but also that their testimony might be material and relevant to his case, and that he exercised due diligence in his attempt to find them and produce them for trial. *Harris v. State*, 489 S.W. 2d 303, 308 (Tex. Crim. App. 1973); *Phipps v.*

*State*, 630 S.W.2d 942, 947 (Tex. Crim. App. 1982). Even if it was conceded that the testimony of the missing witnesses was material to the instant case, we do not believe Bradburry has met his burden to establish diligence in procuring the witnesses. The record fails to indicate that the search for the witnesses was undertaken until after Bradburry's motion to dismiss was filed in September of 2007. *See Harris*, 489 S.W. 2d at 308; *Peoples v. State*, 477 S.W.2d 889, 889 (Tex. Crim. App. 1972). This delay in investigating the case to attempt to locate any witnesses is in large part attributable to Bradburry. This factor weighs against Bradburry.

Bradburry complains for the first time on appeal that he was prejudiced by the lack of recollection by the State's witnesses. Bradburry has not preserved this error as required by Texas Rule of Appellate Procedure 33.1(a)(1)(A). TEX. R. APP. P. 33.1(a)(1)(A). At the time of the dismissal hearing, no evidence was presented nor was argument made as to the lack of recollection of any witnesses or any potential witnesses. Any evidence regarding the witnesses' ability to recall the facts was not before the trial court before it rendered its decision on the motion to dismiss. *Dragoo*, 96 S.W.3d at 313; *Shaw*, 117 S.W.3d at 889. The trial court had informed Bradburry that the issue of the dismissal could be brought up again during the trial. Dismissal for a speedy trial violation was not raised again during Bradburry's jury trial. We therefore cannot consider any evidence presented during the trial in evaluating the prejudice, if any, to Bradburry by trial witnesses who testified regarding their lack of recollection of certain facts of the incident.

*Balancing*

In balancing the four factors, we find that the delay was excessive and the State did not present an adequate explanation for the delay. While it appears from the record that no trial setting had been made for over six months when Bradburry filed his motion for a speedy trial, Bradburry delayed in demanding a speedy trial. He then did not request a hearing for the trial court to consider his motion for speedy trial, which also contributed to the delay. The prejudice to Bradburry, evaluating only the evidence before the trial court at the time of the dismissal hearing was weakened significantly by Bradburry's lack of investigation for more than two years after his indictment.

Balancing the four *Barker* factors, we hold that they weigh against Bradburry. The trial court properly overruled Bradburry's motion to dismiss for denial of a speedy trial.

We overrule Bradburry's sole issue and affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
Affirmed
Opinion delivered and filed July 1, 2009
Do not publish
[CRPM]