

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-12-00018-CR
_____

PATRICK DENNIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Anderson County, Texas
Trial Court No. 54299

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

On October 13, 2006, Patrick Dennis was arrested for DWI. The information for the offense was not filed until July 3, 2008. Dennis was convicted of DWI on December 19, 2011, after the trial court[1] denied his "motion to dismiss for denial of right to speedy trial." He was sentenced to 180 days in county jail and ordered to pay a $500.00 fine, but this sentence was suspended and he was placed on community supervision for twelve months. Dennis' issue on appeal is whether his right to a speedy trial was violated due to the "five (5) year delay between his arrest . . . and the September 8, 2011 hearing" on his motion to dismiss. We affirm.

## I.     The Right to a Speedy Trial

The Sixth Amendment to the United States Constitution guarantees the right to a speedy trial. This right protects the accused from anxiety and concern that accompanies a public accusation, seeks to avoid impairment to a defense, and assures freedom from oppressive pretrial incarceration. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing *Barker v. Wingo*, 407 U.S. 514, 532 (1972)).

The right to a speedy trial cannot be quantified in days or months. *Barker*, 407 U.S. at 523. Thus, Texas courts "analyze federal constitutional speedy-trial claims 'on an ad hoc basis' by weighing and then balancing the *Barker v. Wingo* factors." *Cantu*, 253 S.W.3d at 280. These factors include: (1) the length of the delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the accused. *Id.*; *Barker*, 407 U.S. at 530. "[T]he greater the State's bad

---

[1] Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

2

faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Cantu*, 253 S.W.3d at 280–81. No one factor is determinitive, and all factors must be considered together along with relevant circumstances on a case-by-case basis. *Id*. at 281.

## II. Standard of Review

In reviewing the trial court's ruling on Dennis' constitutional "speedy trial claim, we apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a de novo standard for the legal components." *Id*. at 282 (citing *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002)). Review of the *Barker* factors involves both legal and factual determinations, but "[t]he balancing test as a whole . . . is a purely legal question." *Id*. (citing *Zamorano*, 84 S.W.3d at 648 n.19). Under an abuse of discretion standard, we defer to the trial court's resolution of facts and reasonable inferences drawn therefrom and review the evidence in a light most favorable to the ruling. *Id*. Most of the relevant facts are undisputed in this case.

## III. Analysis of the *Barker* Factors

### A. The Length of Delay

The *Barker* test is triggered by a delay that is unreasonable enough to be considered presumptively prejudicial. *Id*. at 281. As the State concedes, the delay in Dennis' case was "greater than the prima facie duration to trigger analysis under *Barker v. Wingo*." *See id*. (citing *Doggett v. United States*, 505 U.S. 647, 651–52 n.1 (1992); *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. [Panel Op.] 1983).

Dennis was arrested on October 13, 2006, and the trial occurred on December 19, 2011. Undisputedly, the length of delay of the trial was well beyond the minimum necessary to require an examination of the overall issue of an unconstitutional denial of the right of speedy trial. This factor weighs heavily against the State.

**B.        Reason for the Delay**

Dennis complains about the length of delay from October 26, 2006, and September 28, 2011.[2] The only entry in the clerk's record after the date of a monthly appearance report on January 15, 2009, was a July 25, 2011, pretrial notice. At an August 4, 2011, pretrial hearing, the prosecutor admitted, "I have not touched this case or really had any contact with Mr. Dennis," since filing of "earlier . . . plea papers signed by . . . Mr. Dennis on September 10th of 2008."

In a letter constituting the trial court's findings on the motion for denial of speedy trial, the trial court explained:

> The general cause of the delay in this case is the crowded docket. Over the years since Mr. Dennis' arrest, the Criminal District Attorney has tried many things to ease this problem. . . . First, any Defendant may get on any jury docket simply by asking. No motion is necessary, only a request of the court coordinator and the case will move to a regular jury docket scheduled within two weeks of the request. . . . Second, the Monthly Appearance Reports were designed to regularly give defendants a reminder of their options and extend to them a chance to request trial. This was to distinguish between cases that really required a trial and those that were just biding time. Third, the ADA's made themselves available to meet with defendants at times other than docket settings as was done with Mr. Dennis on September 8, 2008. Fourth, the ADA's have taken advantage of the Court's

---

[2]Dennis does not complain about the delay between September 28, 2011, and the time of trial. This is likely due to the fact that he filed a motion for continuance of an October 11, 2011, trial setting and decided to opt out of an October 24, 2011, jury setting so that he could have a bench trial on December 19, 2011.

4

willingness to hear criminal matters at any time whether or not a criminal docket is set.

On August 4, 2011, Dennis announced that he had hired an attorney, and asked for additional time to consult with him. The court granted his request and passed the jury trial setting of August 22, 2011, to September 12, 2011. Dennis also admitted that it was his intention to hire an attorney, but did not do so, explaining, "What do I need to have an attorney on retainer for?"

While the "burden of excusing the delay rests with the State," "different weights should be assigned to different reasons" when analyzing this prong of the *Barker* test. *Barker*, 407 U.S. at 531; *Phillips*, 650 S.W.2d at 400. Deliberate attempts to delay trial in order to hamper a defense are weighed heavily against the State. *Barker*, 407 U.S. at 531. More neutral reasons, such as negligence or overcrowded courts are weighed less heavily. *Id.* A valid reason for delay "should serve to justify appropriate delay." *Id.* Delay which is attributable in whole or in part to the defendant is heavily weighed against the defendant and can constitute waiver of a speedy trial claim. *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (citing *Dickey v. Florida*, 398 U.S. 30, 48 (1970)).

The trial court listed a crowded docket as a "general" cause of delay. However, the delay between January 15, 2009, and July 25, 2011, was not explained, except to the extent that the prosecutor stated he had not "touched this case," indicating negligence on the part of the State. The primary burden is on the government, rather than the defendant, to ensure a speedy trial. *Chapman v. Evans*, 744 S.W.2d 133, 136 (Tex. Crim. App. 1988) (citing *Barker*, 407 U.S. at

5

532).  We find no evidence that the State has ever attempted to secure a trial setting.  The trial court's explanation that the general cause of delay was a crowded docket justifies a finding that this delay, while negative to the State, is weighed less heavily than a deliberate attempt to delay trial.

### C.    Assertion of Right

"The constitutional right is that of a speedy trial, not dismissal of the charges." *Cantu*, 253 S.W.3d at 281.  While it is the duty of the State to bring about a trial, the defendant has a responsibility to assert the right to a speedy trial. *Id*. at 282 (citing *Barker*, 407 U.S. at 527–28).[3] Dennis did not assert his right to a speedy trial.  Instead, Dennis filed a motion to dismiss the case on August 24, 2011, after the case had already been set for trial.  "Because appellant never asked for a speedy trial—he asked only for a dismissal—it was incumbent upon him to show that he had tried to get the case into court so that he could go to trial in a timely manner." *Id*. at 284 (footnote omitted).  The failure to "diligently and vigorously seek a rapid resolution is entitled to 'strong evidentiary weight.'" *Id*. (quoting Barker, 407 U.S. at 531–32).  Here, the trial court noted—and the record supports the findings—that Dennis:

> signed a Monthly Appearance Report.  Mr. Dennis subsequently checked in and signed Monthly Appearance Reports on August, 21, 2008; September 18, 2008; November 13, 2008; December 11, 2008; and January 15, 2009.  The Monthly Appearance Reports were discontinued after January 2009.

> On Monday September 8, 2008, Mr. Dennis had a meeting with Colin McFall, the Assistant District Attorney assigned this case.  Mr. Dennis signed an Admonishment of Right to Counsel, and completed a Guilty Plea Memorandum, which he also signed.  The plea hearing was set for September 10, 2008, at 1:30,

---

[3]Also, failure to make repeated requests for a speedy trial "supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Cantu*, 253 S.W.3d at 283.  Here, only one request for dismissal was made.

> and put on the Court's docket. It isn't clear whether Mr. Dennis appeared on the 10th, but the plea hearing was not held that day and neither party ever asked the Court to reschedule it.

> On each of the Monthly Appearance Records Mr. Dennis was given the opportunity to say that he rejected the State's offer and demanded a jury trial. . . .

On each of these reports, Dennis could "ASK FOR A BENCH TRIAL" or "DEMAND A JURY TRIAL."

Dennis was given the option in each monthly report to ask for a jury trial or bench trial, but did not do so. He was informed of his right to an attorney, chose not to hire an attorney until after notice of a pretrial setting, and asked the court for a continuance prior to the filing of the motion to dismiss.

On August 4, 2011, Dennis announced that he had hired an attorney and asked for additional time to consult with him. The court granted his request and passed the jury trial setting of August 22, 2011, to September 12, 2011.

> The trial court found:

> Mr. Dennis has never asked for a trial. He was given at least six opportunities to request a trial simply by checking a box, and he did not do it. Even now, in his Motion to Dismiss, Mr. Dennis does not ask for a trial but rather to avoid one. Over all this time Mr. Dennis waited until August 2011 to engage an attorney or make any other preparations for trial. When faced with trial, he asked for additional time to prepare. In fact, there is nothing to indicate that Mr. Dennis has ever been interested in actually having a trial.

Further, when a defendant fails to file a motion seeking a speedy trial before seeking dismissal he should provide cogent reasons for this failure. *Cantu*, 253 S.W.3d at 283. Citing *Phillips*, Dennis argues that this Court should not weigh this factor against him because he only

7

hired counsel "two weeks prior to the September 8, 2011 hearing." The court in *Phillips* rejected the State's argument that the defendant waived his claim because he did not assert it. 650 S.W.2d at 401. This was because "for over a year appellant had no opportunity to assert his right, as he was unaware that he had been indicted. Obviously, appellant cannot be faulted for failing to assert a right he did not know he was entitled to." *Id.* at 400. *Phillips* is distinguishable because Dennis was aware that a charging instrument had been filed and made appearances before the court. Dennis also complains that he was not admonished about his right to a speedy trial and could not assert it. We hold pro se litigants to the same standards as a licensed attorney and do not grant them any special consideration. *See Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988).[4]

The facts presented here are distinguishable from those in *Zamorano*, 84 S.W.3d 643. In *Zamorano*, the defense asserted the speedy trial right in one motion which was denied and then asked for reconsideration of the issue four months later. It was not until another ten months elapsed before the trial was conducted.

Based on the failure to seek a speedy trial, and the timing of the motion to dismiss, which was filed after multiple trial settings and after Dennis sought a continuance of trial, we find this factor weighs heavily against him. *See Dragoo v. State*, 96 S.W.3d 308, 314–15 (Tex. Crim. App. 2003); *see also Phipps v. State*, 630 S.W.2d 942, 946 (Tex. Crim. App. [Panel Op.] 1982)

---

[4]Moreover, although the record suggests he may not have been admonished with respect to speedy trial, it is also possible that Dennis actually knew of the right and chose not to assert it since a DWI conviction could result in the loss of his job as a truck driver.

(remaining silent for four years and waiting one month before trial to assert right to speedy trial makes it difficult to prove defendant was denied right to speedy trial).

### D. Prejudice

Prejudice is assessed in the light of the three interests which the right to speedy trial was designed to protect: (1) freedom from oppressive pretrial incarceration; (2) mitigation of the anxiety and concern that accompanies a public accusation; and (3) avoidance of impairment to a defense. *Barker*, 407 U.S. at 532. "[T]he burden is on the accused to make some showing of prejudice which was caused by the delay of his trial." *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973); *Cantu*, 253 S.W.3d at 280.

The trial court noted that Dennis "was released on bond" on October 14, 2006, and had "not been incarcerated for this offense since." Thus, he was not subject to oppressive pretrial incarceration.

We next examine Dennis' level of anxiety. The trial court found:

Mr. Dennis does claim financial loss from his appearances in court. He appeared in court on July 25, 2008, August 4, 2011, and September 8, 2011. The last was a special setting he requested. He may have appeared in court on October 10, 2008, but this was also a special setting to accommodate him. The five times he checked in for the Monthly Appearance Report were also structured to accommodate him. He could check in any time between 8:00 a.m. and 4 p.m. on those days and could leave as soon as he completed the report. He also complains that he had to pay a bond renewal fee, but does not state the amount. He did not incur the costs of hiring an attorney until August 2011.

At the September 8, 2011, hearing on the motion to dismiss, Dennis testified that he had to miss work ten to twelve times in order to appear in court, costing him $10.00 an hour. He complained that he had to pay a bail bondsman twice because they charged him $350.00 again

9

after the first year. Dennis testified the pendency of the case caused him to worry because he had "so much on the line" and would lose his job as a truck driver if found guilty of DWI.

General anxiety is at least some evidence of the type of anxiety considered in *Barker*, but is not sufficient proof of prejudice when "it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Cantu*, 253 S.W.3d at 285–86. Here, Dennis' anxiety that "so much was on the line" was generalized. Dennis was required to take unpaid leave from work ten or twelve times and was required to pay an additional bond payment, which is "some evidence of the type of 'anxiety' that the Supreme Court considers under the prejudice prong." *Zamorano*, 84 S.W.3d at 654. However, unlike Zamorano, Dennis did not make his claim of a speedy trial violation until very shortly before the trial occurred.

The most serious interest protected by a right to a speedy trial is the prevention of an impairment of a defense. *Barker*, 407 U.S. at 531. If witnesses disappear during a delay, or are unable to recall events, prejudice is obvious. *Id*. Dennis did not provide any testimony with respect to this factor at the hearing, and it is not argued in his brief. This most serious right was not affected by the delay.

### E. Balancing

"Having addressed the four *Barker* factors, we must now balance them." *Dragoo*, 96 S.W.3d at 316. The length of delay weighs heavily in favor of Dennis and against the State. There is no evidence that the delay was intentional or an attempt to gain an advantage by the State, but was due to docket congestion, which weighs against the State, but not heavily. Dennis never attempted to invoke his right to a speedy trial, as the filing of the motion to dismiss shows

10

a desire to have no trial, not a speedy one. *Cantu*, 253 S.W.3d at 282. Even if the motion to dismiss is considered as invoking his right to a speedy trial, it was not filed until August 2011 and, after a continuance was granted for defense counsel's schedule, the trial occurred in December 2011. In cases of a substantial delay, a defendant actually seeking a speedy trial is more likely to request it and failure to do so is weighed more heavily against finding a violation. *Dragoo*, 96 S.W.2d at 314. The failure to timely assert the right to a speedy trial weighs heavily against Dennis. Finally, no pretrial incarceration occurred in this case. Dennis' testimony establishes some prejudice for his required court appearances and consequent loss of income, but on the much more important issue of impairment of his defense, no prejudice is shown. The weight of the *Barker* factors, when balanced together, leads us to conclude that Dennis' right to a speedy trial was not violated.

## IV.    Conclusion

We affirm the trial court's judgment.


                                              Jack Carter
                                              Justice


Date Submitted:      June 6, 2012
Date Decided:        June 11, 2012

Do Not Publish