

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00173-CR

Uzziel N. **MUNOZ-CRUZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 5, Bexar County, Texas
Trial Court No. 549370
Honorable John Longoria, Judge Presiding

Opinion by:  Beth Watkins, Justice

Sitting:     Beth Watkins, Justice
             Liza A. Rodriguez, Justice
             Lori I. Valenzuela, Justice

Delivered and Filed: August 31, 2022

AFFIRMED

Appellant Uzziel N. Munoz-Cruz appeals his conviction for evading detention. He contends he was denied the right to a speedy trial and challenges the sufficiency of the evidence to support his conviction. We affirm.

## BACKGROUND

Munoz-Cruz fled from a traffic stop on July 12, 2017. After delays and the denial of his motions for speedy trial, Munoz-Cruz opted for a bench trial. At the April 2021 trial, Deputy Sheriff Ebony Jones testified that he initiated the traffic stop of a black Chevy Impala driving

eastbound on I-10 because the Impala lacked a front license plate. The driver of the Impala pulled off the highway and into the parking lot of a truck stop. As Jones and his trainee partner approached the car on foot, Jones saw the passenger through the open driver's side window. Then, the driver took off at a "high rate of speed." The deputies chased the Impala for about two miles until it crashed. The driver and the passenger then fled on foot. At least ten officers responded to the scene. The passenger ran into a field, but five or ten minutes later, officers found him and brought him back to Jones, who arrested him. Jones had "gotten a look at him as he was running. And the— when he was brought back to me, I could tell that he had just ran. He was in an excited state breathing heavily and sweaty."

In court, Jones identified Munoz-Cruz as the passenger, and said he did so from seeing Munoz-Cruz when he first approached the Impala, then seeing Munoz-Cruz running, and then seeing Munoz-Cruz after he was apprehended. He did not recall what Munoz-Cruz was wearing that day, but he did remember Munoz-Cruz's facial features, testifying "I don't focus on clothing. I do focus on facial details, because clothing can change. Facial details don't." Jones acknowledged that Munoz-Cruz "was not breaking any laws other than evading on foot, once the vehicle came to a stop." Defense counsel moved for a directed verdict on the ground that the deputies—who never commanded Munoz-Cruz to stop—had no reasonable suspicion to detain him. The trial court ultimately found Munoz-Cruz guilty and sentenced him to 154 days' incarceration. After applying credit for time served, the trial court found the judgment satisfied. Munoz-Cruz appeals.

**ANALYSIS**

*Speedy Trial*

In his first issue, Munoz-Cruz argues that the delay in the trial of his case violated his Sixth Amendment right to a speedy trial.

*Applicable Law*

"The Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees a speedy trial to an accused." *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). The Supreme Court has listed four factors that courts should consider in addressing speedy-trial claims: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "If the defendant can make a threshold showing that the interval between accusation and trial is 'presumptively prejudicial,' then a court must consider each of the remaining *Barker* factors and weigh them." *Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016). "When reviewing the trial court's application of the *Barker* test, we give almost total deference to the trial court's historical findings of fact that the record supports, and we draw reasonable inferences from those facts necessary to support the trial court's findings." *Id*. at 767– 68. "A reviewing court should not consider in its deliberations record evidence that was not before the trial court when it made its ruling." *Id*. at 768. "Review of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question that we review de novo." *Id*.

*Application*

The trial court did not make findings of fact, but it took judicial notice of the records in the case, including the docket sheet.

**First factor.** Courts find delays "approaching one year to be unreasonable enough to trigger the *Barker* enquiry." *Balderas*, 517 S.W.3d at 768 (internal quotation marks omitted). In this case, Munoz-Cruz was arrested and charged in July 2017 and tried in April 2021—an interval of more than three and one-half years. Such an interval stretches "far beyond the minimum needed to trigger the enquiry" and "weighs heavily in favor of finding a violation of the speedy trial right."

*Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). That is especially true given that the information in this case charged an "ordinary street crime." *Barker*, 407 U.S. at 531 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.").

**Second factor.** "When we assess the second *Barker* factor—the State's reason for the delay—we assign different weights to different reasons." *Balderas*, 517 S.W.3d at 768. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Barker*, 407 U.S. at 531. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id*. "Delay caused by either the defendant or his counsel weighs against the defendant." *Balderas*, 517 S.W.3d at 768. "In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Id*. (internal quotation marks omitted).

The reasons for the long delay in the instant case can be attributed mutually to the actions of the State and Munoz-Cruz. Munoz-Cruz failed to appear in court on July 26, 2018 and was not taken into custody until December 2018. A delay attributable to the defendant may constitute a waiver of a speedy trial claim. *Barker*, 407 U.S. at 529 ("We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside."); *Rivera v. State*, 990 S.W.2d 882, 890 (Tex. App.—Austin 1999, pet. ref'd) (given defendant's "hasty disappearance from Austin" and use of aliases, the "reason for delay" factor did not weigh against the State).

After Munoz-Cruz was taken into custody in December 2018, the State caused at least two resets because it had not obtained the video evidence of the traffic stop. There is no evidence that

these delays were intended to hamper the defense, so they weigh against the State, but not heavily. *Id*.

In January 2020, there was an agreed reset to March 2020. Before that setting, however, jury trials were suspended in Bexar County due to the COVID-19 pandemic. Those delays do not weigh heavily against the State. *See State v. Conatser*, 645 S.W.3d 925, 929–30 (Tex. App.—Dallas 2022, no pet.) (months of delay "dominated by the unforeseeable initial impact of the COVID-19 pandemic" not attributable to State; delay due to backlog at crime lab weighed "only slightly against the State"). Given Munoz-Cruz's responsibility for part of the delay, the agreed reset in January 2020, and the fact that the rest of the delay was due to COVID, the second factor weighs against the State, but not heavily. *Cf. Zamorano v. State*, 84 S.W.3d 643, 650 (Tex. Crim. App. 2002) ("This was not a complex case; it was a simple DWI, and yet the State had no explanation for why it could not try the case for four years.").

**Third factor.** "The third *Barker* factor—the defendant's assertion of his right to a speedy trial—is entitled to strong evidentiary weight in determining whether the defendant has been deprived of that right." *Balderas*, 517 S.W.3d at 771. "A defendant's lack of a timely demand for a speedy trial indicates strongly that he did not really want one." *Id*. "[I]naction weighs more heavily against a violation the longer the delay becomes." *Id*. (internal quotation marks omitted).

Munoz-Cruz first asserted his right to a speedy trial in a Request for Discovery he filed in January 2019—eighteen months after he was arrested for evading detention and approximately one month after he was arrested for failing to appear in court. But Munoz-Cruz did not bring this filing to the trial court's attention until November 2020—twenty-two months later. *Barker*, 407 U.S. at 529 (trial court can exercise discretion to "weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection"); *Huff v. State*, 467 S.W.3d 11, 29–30 (Tex. App.—San Antonio 2015, pet. ref'd) (delay in asserting speedy trial right

and lack of attempt to have claim heard weigh against finding a constitutional violation). The State argues that Munoz-Cruz was complicit in many of the resets after this filing, but aside from the agreed reset in January 2020, that argument is not reflected on the docket sheet or supported by any testimony. That agreed reset, though, is inconsistent with the assertion of a speedy trial right. *Smith v. State*, 436 S.W.3d 353, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

Munoz-Cruz next filed stand-alone speedy trial motions on October 28, 2020 and then again on February 5, 2021—the same day the trial court denied the October 28, 2020 motion. At the first hearing, the trial court noted that COVID was still causing delays in jury trials. Although Munoz-Cruz's motion ostensibly sought "an immediate and speedy trial," at the hearing, his counsel argued that "due to the speedy trial violation, the only possible remedy is a dismissal." Similarly, even though Munoz-Cruz's second motion asked for "an immediate and speedy trial," at the hearing on that motion, his counsel argued that "the only remedy is a dismissal." At that hearing, Munoz-Cruz himself stated his desire to waive a jury trial and try his case to the bench. He filed these speedy trial motions more than three years after his arrest. Given that Munoz-Cruz filed his first assertion eighteen months after his arrest, and his second and third assertions more than three years after his arrest, and then sought a dismissal rather than a speedy trial, the third factor weighs against him. *See State v. Smith*, 76 S.W.3d 541, 550 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

**Fourth factor.** "The fourth *Barker* factor focuses on prejudice to the defendant because of the length of delay." *Balderas*, 517 S.W.3d at 772. "To analyze prejudice, we consider three interests of defendants that the Speedy Trial Clause was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Id.* "The last interest is the most important because the fairness of the criminal-justice system is distorted when a defendant is

unable to adequately prepare his defense." *Id*. "A defendant has the burden to make some showing of prejudice, but a showing of actual prejudice is not required." *Id*. "Excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or identify." *Id*.

At both hearings, Munoz-Cruz testified concerning the fourth *Barker* factor, specifically the impairment of his defense.[1] He explained that in June 2020, he was shot and had open heart surgery. He testified that since then, his speech and memory are impaired. At the first hearing, he said he could not remember anything about July 12, 2017. At the conclusion of that hearing, defense counsel argued that Munoz-Cruz's lack of recollection of the incident that took place made him impossible to defend. The State contended that any memory impairment went to competency to stand trial and that the "defense has not demonstrated that the delay that has occurred has actually prejudiced the defendant in a substantial fashion as far as the—as far as the state is concerned." The trial court seemed to agree, remarking:

> The delay itself does not cause the loss of ability to provide a defense. The delay that—the delay exists, but the delay did not cause the lack of ability to assist and provide a defense. That was the result of intervening factors, specifically his being shot by some third party or parties. The delay does not cause his loss of memory. Ordinarily you could say that it may have, that it did, but from what the testimony of the defendant was, that he had to even relearn his ABCs, that's not a delay—that's not the result of a delay, that's a result of trauma. In fact, the defense specifically referred to his trauma.

At the end of the first hearing, the trial court ordered Munoz-Cruz be evaluated for competency. Nothing in the record suggests such an evaluation occurred.

At the second hearing, Munoz-Cruz's memory appeared to have improved—he testified that his memory of this event was hazy but that he had a factual and rational understanding of the case against him and he was able to recall certain events he previously could not. He testified that the driver from the car involved in this case, Reymundo Rubalcava, is the younger brother of the

---

[1] Munoz-Cruz stipulated that most of his pretrial incarceration related to new felony charges.

person who shot him in June 2020. Munoz-Cruz further testified he had heard the brothers are "both on the run" and testified that his inability to call Rubalcava as a witness also impaired his defense.

But Munoz-Cruz did not make a showing that Rubalcava's testimony would have been exculpatory or otherwise beneficial to him. *Deeb v. State*, 815 S.W.2d 692, 706 (Tex. Crim. App. 1991); *Prihoda v. State*, 352 S.W.3d 796, 805 (Tex. App.—San Antonio 2011, pet. ref'd) ("No evidence was presented to establish Prihoda's efforts to locate the witnesses or that the witnesses would have benefitted his defense."). Even if Rubalcava's testimony were material to the instant case, Munoz-Cruz admitted that he never issued a subpoena for Rubalcava for any of the prior trial settings. *Phipps v. State*, 630 S.W.2d 942, 947 (Tex. Crim. App. 1982). Munoz-Cruz has not shown diligence in attempting to procure Rubalcava's testimony. *See id*.

That leaves Munoz-Cruz's own memory problems. The trial court discounted the memory problems caused by the shooting because they were not caused by the delay itself but rather by an intervening factor. However, the same argument would apply to a witness who becomes unavailable during the delay. And if "witnesses die or disappear during a delay," the Supreme Court has said, "the prejudice is obvious." *Barker*, 407 U.S. at 532; *see, e.g., Puckett v. State*, 279 S.W.3d 434, 441 (Tex. App.—Texarkana 2009, no pet.) (particularized prejudice shown where defendant established that delay caused several eyewitnesses who would have testified for him to become unavailable). The prejudice factor weighs in favor of Munoz-Cruz.

**Balancing.** Having addressed the four *Barker* factors, we must now balance them. *Balderas*, 517 S.W.3d at 773. And we must do so "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id*. (internal quotation marks omitted).

Weighing in favor of finding a violation of Munoz-Cruz's speedy trial right are the facts that the delay was excessive and that some prejudice resulted from the delay. Weighing against finding a violation are the facts that Munoz-Cruz failed to appear and agreed to a reset, and so was responsible for at least part of the delay that occurred before jury trials were suspended as a result of COVID. "Any prejudice to [Munoz-Cruz] was extenuated by his role in the delay." *Id.* Further, Munoz-Cruz did not seek a speedy trial ruling until several years after his arrest, at which time he asked for a dismissal. *See Cantu v. State*, 253 S.W.3d 273, 283 (Tex. Crim. App. 2008) ("Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one."). We hold that the four factors, balanced together, weigh against finding a violation of Munoz-Cruz's right to a speedy trial. We therefore overrule Munoz-Cruz's first issue.

### *Sufficiency*

In his second issue, Munoz-Cruz challenges the sufficiency of the evidence to prove his identity as the evader and that Jones's attempted detention of Munoz-Cruz was lawful.

### *Standard of Review*

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in the verdict's favor to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). In a legal-sufficiency analysis, we do not ignore any evidence, but instead view all the evidence in the light most favorable to the verdict. *Cary v. State*, 507 S.W.3d 750, 759 n.8 (Tex. Crim. App. 2016). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence."

*Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Rather, "[a] court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id*. This rationality requirement is a key and explicit component of the *Jackson* sufficiency standard. *See Jackson*, 443 U.S. at 319.

*Applicable Law*

A person commits an evading offense "if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." TEX. PEN. CODE § 38.04(a). "The text of the statute is plain: it requires proof that an attempted arrest or detention is lawful at the time the person flees." *Day v. State*, 614 S.W.3d 121, 127 (Tex. Crim. App. 2020). "The statute punishes those who refuse to submit to lawful authority at the moment an officer attempts an arrest or detention by adding an additional penalty for that refusal to comply." *Id*. at 128–29.

*Application*

Munoz-Cruz first contends the State did not prove beyond a reasonable doubt that he was the passenger in the Impala. The identity of a perpetrator may be proven by direct evidence, circumstantial evidence, or inferences. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). A conviction may be based on the testimony of a single eyewitness. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971). Munoz-Cruz suggests that Jones only identified him as the passenger because other officers captured him and brought him back to the scene. But Jones specifically testified that his identification was based on seeing Munoz-Cruz three different times: in the passenger seat, while running, and post-capture. *See Tutson v. State*, 530 S.W.3d 322, 327–28 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("show up" procedure—where "Officer Black brought appellant to scene and asked Officer Marshall if appellant was the individual Officer Marshall saw fleeing the car"—did not give rise to substantial likelihood of irreparable misidentification where Officer Marshall testified that he had a "good look" at appellant closely

and intensely before he fled). Although Jones—who had at the time been a deputy for twenty years—could not recall what Munoz-Cruz was wearing, he recognized Munoz-Cruz's facial details and did not equivocate in his identification. We therefore hold that the evidence is legally sufficient to support the Munoz-Cruz's identity as the passenger who fled.

Munoz-Cruz next contends that the State did not prove that he was lawfully detained. "A Fourth Amendment analysis regarding an officer's stop and frisk has two prongs." *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). First, a court must "decide whether the officer's action was justified at its inception." *Id*. "Next, a court must decide whether the search and seizure were reasonably related in scope to the circumstances that justified the stop in the first place." *Id*. "In the context of a traffic stop, police officers are justified in stopping a vehicle when the officers have reasonable suspicion to believe that a traffic violation has occurred." *Id*. A traffic stop of a vehicle communicates to a reasonable passenger that police officers are "exercising control to the point that no one in the car [is] free to depart without police permission." *Brendlin v. California*, 551 U.S. 249, 257 (2007).

All occupants of a vehicle in a traffic stop are "subject to like control by the successful display of authority." *Id.* at 260. "The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). A passenger is seized, just as the driver is, "from the moment [a car stopped by the police comes] to a halt on the side of the road." *Brendlin*, 551 U.S. at 263. "The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop," so long as the stop is not unreasonably extended. *Johnson*, 555 U.S. at 333; *Lerma*, 543 S.W.3d at 192–93; *see also Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015) (a traffic stop is reasonable only for the amount of time required to complete the seizure's "mission"—to address the traffic violation that warranted the stop and related safety concerns).

Jones testified that he initiated the traffic stop because the Impala was missing its front license plate. The Texas Transportation Code provides that a person commits an offense by operating a motor vehicle on a public highway without a front license plate. *See* TEX. TRANSP. CODE ANN. § 504.943(a); 43 TEX. ADMIN. CODE ANN. § 217.27(b)(1). Munoz-Cruz does not challenge the propriety of the initial traffic stop. Instead, he asserts that the detention of a passenger in a vehicle stopped for a traffic violation is not justified. But the traffic stop of the Impala communicated to Munoz-Cruz that he was not free to terminate the encounter with the police and move about at will. *Brendlin*, 551 U.S. at 258. This temporary seizure of the Impala's driver and Munoz-Cruz continued and remained reasonable for the duration of the traffic stop, so long as that stop was not unreasonably prolonged. *Johnson*, 555 U.S. at 333; *Lerma*, 543 S.W.3d at 192–93. The police were not required to have cause to believe that Munoz-Cruz was involved in criminal activity. *Johnson*, 555 U.S. at 327. The traffic stop investigation had not been fully resolved at the time Munoz-Cruz fled. *Lerma*, 543 S.W.3d at 191 ("Once the computer check is completed, and the officer knows that the driver has a current valid license, no outstanding warrants, and the car is not stolen, the traffic stop investigation is fully resolved."). Therefore, viewing the evidence under the appropriate standards and applicable law, the evidence was sufficient to prove Munoz-Cruz was lawfully detained. *See Rush v. State*, 549 S.W.3d 755, 758 (Tex. App.—Waco 2017, no pet.). We overrule Munoz-Cruz's second issue.

## CONCLUSION

We affirm the trial court's judgment.

Beth Watkins, Justice

DO NOT PUBLISH